# Reeser *v.* Metropolitan Electric Co., Appellant.

*Negligence—Master and servant—Fellow servant—Common enterprise—Negligence of foreman.*

1. For the consequences of an accidental slip made by a foreman, while engaged with fellow servants in the performance of manual labor, the employer is not responsible.

2. Where a particular act in which a foreman is engaged at the time of an accident is not a duty whose performance in any way particularly or properly belongs to the master, but on the contrary is on the same level with the work of other employees and amounts simply to co-operating with the rest of the men, the foreman stands upon precisely the same footing with them, and his act cannot be fairly connected with anything in the line of superintendence.

Argued March 2, 1914.   Appeal, No. 262, Jan. T., 1913, by defendant, from judgment of C. P. Berks Co., Nov. T., 1910, No. 54, on verdict for plaintiff in case of Robert L. Reeser v. Metropolitan Electric Company.   Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Trespass to recover damages for personal injuries. Before ENDLICH, P. J.

The opinion of the Supreme Court states the facts.
Verdict for plaintiff for $2,400, and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were in refusing to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*C. H. Ruhl,* with him *R. L. Jones,* for appellant.—The plaintiff's evidence did not prove what caused the accident, and the jury should not have been permitted to guess at the cause: Philadelphia & Reading Ry. Co. v.

Schertle, 97 Pa. 450; Wagner v. Lehigh Traction Co., 212 Pa. 132 (61 Atl. Repr. 814).

If the foreman was negligent he was acting as a fellow workman, and such negligence imposed no liability upon the defendant: Ricks v. Flynn, 196 Pa. 263 (46 Atl. Repr. 360); Miller v. American Bridge Co., 216 Pa. 559 (65 Atl. Repr. 1109); Vito v. W. Chester Ry. Co., 217 Pa. 398 (66 Atl. Repr. 659); Calhoun v. Holland Laundry, 220 Pa. 281 (69 Atl. Repr. 756); King v. McClure Co., 222 Pa. 625 (72 Atl. Repr. 228); Hurley v. Western A. R. R. Co., 238 Pa. 65; Feeney v. Abelson, 49 Pa. Superior Ct. 163; Sorden v. Parker, 53 Pa. Superior Ct. 539; Dettra v. Kestner, 147 Pa. 566.

*Harvey F. Heinly,* for appellee.—The foreman was negligent, and his negligence caused the accident: Friend v. Kramer, 236 Pa. 618; Wagener v. Railroad Co., 235 Pa. 559; Madden v. Lehigh Valley Railroad Co., 236 Pa. 104.

Whether the foreman was acting as a vice principal or as a fellow workman at the time of the accident was for the jury: Rauhauser v. York Manufacturing Company, 50 Pa. Superior Ct. 506; Kelly v. Henry Bower Manufacturing Company, 239 Pa. 555; Holz v. H. J. Heinz Company, 55 Pa. Superior Ct. 81; O'Brien v. Look, 171 Mass. 36, 50 N. E. Repr. 458; Meagher v. Crawford Laundry Machine Company, 187 Mass. 586, 73 N. E. Repr. 853.

OPINION BY MR. JUSTICE POTTER, July 1, 1914:

The plaintiff here sought to recover damages for injuries which he alleged resulted from the negligence of defendant's foreman.

The plaintiff was one of several employees of defendant, who were engaged in the erection of poles upon which wires were to be strung. While thus engaged a pole fell upon plaintiff and injured him. In the history of the case the operation in which the men were engaged,.

is thus described. The pole in question was about fifty feet long and about twenty inches in diameter at the butt. A hole was dug in the ground, and iron bars were inserted therein at one side, and the butt of the pole was placed against them, in order that it might slide more smoothly into the hole. The other end of the pole was lifted by the men, and after it reached a certain elevation it was raised upon what was known as a deadman, which was a stout piece of timber with a U-shaped prong at the top and an iron spear point in the center. Two of these deadmen were used, one of which was in charge of the plaintiff. The other members of the gang had poles or pikes, of varying lengths, with iron points at the end, which they stuck into the pole, raising it by what was termed a rocking-process, from one deadman to the other, the deadmen in turn being moved toward the hole at each step in the rocking-process, the pole meanwhile being raised to a position approaching the perpendicular. During this process it was the duty of one of the men to assist in holding the pole in position, with cant-hooks fastened to the pole near the butt. When the pole in question fell, the foreman of the gang was operating the cant-hooks, but the evidence shows that he did not usually attend to this duty. At the time of the accident, the pole had been raised to an angle of about forty-five degrees, and while in this position and while resting upon the deadman, which was in charge of plaintiff, it fell and injured him. The accident is thus described, by plaintiff. "I was standing there, holding the deadman under the pole; the next thing I saw Griesemer lean out, and that quick the pole turned off of the point of the deadman," and fell. The testimony upon the part of defendant tended to show that the deadman was not placed at the right angle under the pole, and that it slipped out, letting the pole down. It was a wet day, and the pole was very slippery. But no matter whether the pole turned by reason of some inadvertent motion of the foreman who happened at the moment to be in charge of the

cant-hooks, or whether the deadman by reason of not being properly adjusted, slipped and caused the pole to fall, it is perfectly apparent that at the time, the men were all engaged in one common purpose, which was the raising of the pole, and the settling of it, in its place in the hole prepared for it. Intelligent co-operation in manual labor was all that was required. The particular act in which the foreman was at the time engaged, the holding of the cant-hook, was not a duty, whose performance in any way peculiarly or properly belonged to the master. Upon the contrary the manipulation of these implements was upon the same level with the work of the other employees, and in fact it appears from the evidence that the cant-hooks were generally handled by one of the other men, and not by the foreman. In holding them at that particular time, the foreman was simply co-operating with the rest of the men, and stood upon precisely the same footing. It is more than doubtful under the evidence, whether anything which Griesemer did, in handling the cant-hooks, could properly be regarded as causing the fall of the pole, or that he was in any way negligent. But if so, it did not occur while he was engaged in the discharge of any duty which was in its nature that of superintendence; but it did occur while he was engaged in a bit of manual labor with the other men, in an effort to accomplish an object, which all were uniting to bring about. Eleven men were at the moment engaged in a common undertaking, each of them having a part to perform. At least a half dozen implements in addition to the cant-hooks were brought into use to aid in holding the pole in position. The theory that the pole fell because of anything which Griesemer did, seems to us to have been based on nothing more than conjecture. But if the action of Griesemer had anything to do with it, clearly it was while he was engaged as a fellow workman, assisting in the work which the men were doing in common; and it cannot under the evi-

dence be fairly connected with anything in the line of superintendence.

After examining all the evidence, we think the conclusion is unavoidable, that defendant was entitled to an affirmance of its third point, which was a request for binding instructions. The same question arose upon the rule for judgment non obstante veredicto, and judgment should have been there entered for defendant.

The fourth, fifth and sixth assignments of error are sustained. The judgment is reversed, and is here entered for the defendant.