ARTHUR WAGNER, Appellant, v. INTERNATIONAL RAIL-
WAY COMPANY, Respondent.

Negligence — railroads — passengers — fatal injury to pas-
senger by being thrown from platform of trolley car while
running around curve on high trestle — plaintiff, a relative
and companion of such passenger, injured by fall from trestle
while walking back in darkness to find body of his companion
— when such act of plaintiff not contributory negligence —
when railway company liable to plaintiff — erroneous charge
of trial court.

Plaintiff and his cousin boarded a car of an electric railway at the
foot of a long trestle over which the car after running around a sharp
curve crossed a bridge over the tracks of two steam railroads. The
car was crowded and plaintiff and his cousin had to stand on the
rear platform. The platform was provided with doors but the con-
ductor did not close them. As the car, without slackening speed,
turned the curve, and at the point where the trestle changes to a
bridge, plaintiff's cousin was thrown out. An alarm was given but
the car did not stop but went on across the bridge and stopped near
the foot of the incline on that side. It was dark but plaintiff walked
back along the trestle, until he arrived at the bridge where he thought
to find his cousin's body. He says that he was asked to go there by
the conductor and that the conductor followed him with a lantern.
This is denied by the conductor. When plaintiff reached the bridge
he found upon a beam his cousin's hat but nothing else. About him
was darkness, he missed his footing and fell to the ground beneath,
receiving the injuries for which this action is brought. Several other
persons, instead of ascending the trestle, went beneath it and dis-
covered under the bridge the body which they were seeking. The
trial court charged that the negligence of the defendant toward
plaintiff's cousin would not charge it with liability for injuries suffered
by plaintiff unless two other facts were found: First, that the plaintiff
had been invited by the conductor to go upon the bridge; and second,
that the conductor followed with a light. Thus limited, the jury
found in favor of the defendant. Held, that the limitation imposed
by the charge of the trial judge cannot be upheld; that whether the
fall of plaintiff's cousin was due to the defendant's negligence, and
whether plaintiff, in going to the rescue, as he did, was foolhardy or
reasonable in the emergency confronting him, were questions for the
jury. Held, further, that the plaintiff could not be held guilty of

negligence, as matter of law, because in hastening to the rescue of his cousin he walked over the trestle to the bridge instead of upon the ground beneath it. There was reason to believe that his cousin's body might be upon the bridge or trestle, and if plaintiff erred in judgment in the excitement and confusion of the emergency such error could not be charged against him as negligence.

*Wagner* v. *International Ry. Co.*, 189 App. Div. 925, reversed.

(Argued October 24, 1921; decided November 22, 1921.)

APPEAL from a judgment, entered March 9, 1920, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, overruling plaintiff's exceptions ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment in favor of defendant upon the verdict.

*Hamilton Ward* for appellant. The court erred in holding as a matter of law that the first accident which resulted in the fall of Herbert Wagner was not the proximate cause of the plaintiff's accident, and in refusing to submit to the jury the question of the defendant's negligence in causing the first accident. (*Gatin* v. *M. S. R. Co.*, 89 App. Div. 311; 181 N. Y. 515; *Lehr* v. *Ry. Co.*, 118 N. Y. 556; *Donnelly* v. *Piercy Contracting Co.*, 222 N. Y. 210; *Laidlaw* v. *Sage*, 158 N. Y. 73; *Pollett* v. *Long*, 56 N. Y. 200; *Cohn* v. *Realty Co.*, 162 App. Div. 791; *Gibney* v. *State*, 137 N. Y. 1; *O'Brien* v. *Erie R. R. Co.*, 139 App. Div. 291; *Kinsella* v. *N. Y. C. & H. R. R. R. Co.*, 162 App. Div. 926; *Schachter* v. *I. R. T. Co.*, 70 Misc. Rep. 558.) The court erred in charging the jury that there could be no recovery if plaintiff went upon the trestle of his own accord or without invitation from the conductor, and in charging that unless the jury found that the conductor asked plaintiff to show him where Herbert fell, and plaintiff went up in response to such request to point out the place and the conductor followed

him with a lantern up the trestle to near where plaintiff
himself fell, the verdict must be no cause of action.
(*Eckert* v. *L. I. R. R. Co.*, 43 N. Y. 502; Thompson on
Neg. § 199.)

*Edward E. Franchot* for respondent. The trial court
committed no error in instructing the jury that they
could not find a verdict based upon any alleged negligence
of the defendant prior or leading up to the first accident
when Herbert Wagner fell from the car. (*Hoffman* v.
*King*, 160 N. Y. 618; *Trapp* v. *McClellan*, 68 App. Div.
362; *Fanizzi* v. *N. Y. & Queens R. R. Co.*, 113 App.
Div. 440; *Laidlaw* v. *Sage*, 158 N. Y. 101; *Gibney* v.
*State*, 137 N. Y. 1; *McGovern* v. *Degnon-McLean Con.
Co.*, 120 App. Div. 524; *Murphy* v. *City of New York*,
89 App. Div. 93; *Jex* v. *Straus*, 122 N. Y. 293; *Story*
v. *Mayor, etc.*, 29 App. Div. 316; *Leeds* v. *N. Y. Telephone
Co.*, 178 N. Y. 118; *Cleveland* v. *N. J. Steamboat Co.*,
68 N. Y. 306; *Mars* v. *Del. & H. Canal Co.*, 54 Hun,
625; *Luedeke* v. *N. Y. C. & H. R. R. R. Co.*, 164 App.
Div. 104; *Beetz* v. *City of Brooklyn*, 10 App. Div. 382;
*McVay* v. *Brooklyn, etc., R. R. Co.*, 113 App. Div. 724;
*Dulfer* v. *Brooklyn Heights R. R. Co.*, 115 App. Div. 670;
*Knaisch* v. *Joline*, 138 App. Div. 854.) The additional
charges referred to in plaintiff's brief do not add to his
allegation of error. (*Sann* v. *Johns Mfg. Co.*, 16 App.
Div. 252.)

CARDOZO, J. The action is for personal injuries.

The defendant operates an electric railway between
Buffalo and Niagara Falls. There is a point on its line
where an overhead crossing carries its tracks above those
of the New York Central and the Erie. A gradual
incline upwards over a trestle raises the tracks to a height
of twenty-five feet. A turn is then made to the left
at an angle of from sixty-four to eighty-four degrees.
After making this turn, the line passes over a bridge,

1921.]              Opinion, per CARDOZO, J.      [232 N. Y. 176]

which is about one hundred and fifty-eight feet long from one abutment to the other. Then comes a turn to the right at about the same angle down the same kind of an incline to grade. Above the trestles, the tracks are laid on ties, unguarded at the ends. There is thus an overhang of the cars, which is accentuated at curves. On the bridge, a narrow footpath runs between the tracks, and beyond the line of overhang there are tie rods and a protecting rail.

Plaintiff and his cousin Herbert boarded a car at a station near the bottom of one of the trestles. Other passengers, entering at the same time, filled the platform, and blocked admission to the aisle. The platform was provided with doors, but the conductor did not close them. Moving at from six to eight miles an hour, the car, without slackening, turned the curve. There was a violent lurch, and Herbert Wagner was thrown out, near the point where the trestle changes to a bridge. The cry was raised, "Man overboard." The car went on across the bridge, and stopped near the foot of the incline. Night and darkness had come on. Plaintiff walked along the trestle, a distance of four hundred and forty-five feet, until he arrived at the bridge, where he thought to find his cousin's body. He says that he was asked to go there by the conductor. He says, too, that the conductor followed with a lantern. Both these statements the conductor denies. Several other persons, instead of ascending the trestle, went beneath it, and discovered under the bridge the body they were seeking. As they stood there, the plaintiff's body struck the ground beside them. Reaching the bridge, he had found upon a beam his cousin's hat, but nothing else. About him, there was darkness. He missed his footing, and fell.

The trial judge held that negligence toward Herbert Wagner would not charge the defendant with liability for injuries suffered by the plaintiff unless two other facts were found: First, that the plaintiff had been

invited by the conductor to go upon the bridge; and second, that the conductor had followed with a light. Thus limited, the jury found in favor of the defendant. Whether the limitation may be upheld, is the question to be answered.

Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperilled victim; it is a wrong also to his rescuer. The state that leaves an opening in a bridge is liable to the child that falls into the stream, but liable also to the parent who plunges to its aid (*Gibney* v. *State of N. Y.*, 137 N. Y. 1). The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path (*Eckert* v. *L. I. R. R. Co.*, 43 N. Y. 502. Cf. *Matter of Waters* v. *Taylor Co.*, 218 N. Y. 248). The rule is the same in other jurisdictions (*Dixon* v. *N. Y., N. H. & H. R. R. Co.*, 207 Mass. 126, 130, and *Bond* v. *B. & O. R. R. Co.*, 82 W. Va. 557, with cases there cited. Cf. 1 Beven on Negligence, 157, 158). The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had (*Ehrgott* v. *Mayor, etc., of N. Y.*, 96 N. Y. 264, 280, 281).

The defendant says that we must stop, in following the chain of causes, when action ceases to be "instinctive." By this, is meant, it seems, that rescue is at the peril of the rescuer, unless spontaneous and immediate. If there has been time to deliberate, if impulse has given way to judgment, one cause, it is said, has spent its force, and another has intervened. In this case, the plaintiff walked more than four hundred feet in going to Herbert's aid.

He had time to reflect and weigh; impulse had been followed by choice; and choice, in the defendant's view, intercepts and breaks the sequence. We find no warrant for thus shortening the chain of jural causes. We may assume, though we are not required to decide, that peril and rescue must be in substance one transaction; that the sight of the one must have aroused the impulse to the other; in short, that there must be unbroken continuity between the commission of the wrong and the effort to avert its consequences. If all this be assumed, the defendant is not aided. Continuity in such circumstances is not broken by the exercise of volition (*Twomley* v. *C. P., N. & E. R. R. R. Co.*, 69 N. Y. 158; *Donnelly* v. *Piercy Contracting Co.*, 222 N. Y. 210; *Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47, 54). So sweeping an exception, if recognized, would leave little of the rule. "The human mind," as we have said (*People* v. *Majone*, 91 N. Y. 211, 212), "acts with celerity which it is sometimes impossible to measure." The law does not discriminate between the rescuer oblivious of peril and the one who counts the cost. It is enough that the act, whether impulsive or deliberate, is the child of the occasion.

The defendant finds another obstacle, however, in the futility of the plaintiff's sacrifice. He should have gone, it is said, below the trestle with the others; he should have known, in view of the overhang of the cars, that the body would not be found above; his conduct was not responsive to the call of the emergency; it was a wanton exposure to a danger that was useless (*Miller* v. *Union Ry. Co. of N. Y. City*, 191 N. Y. 77, 80). We think the quality of his acts in the situation that confronted him was to be determined by the jury. Certainly he believed that good would come of his search upon the bridge. He was not going there to view the landscape. The law cannot say of his belief that a reasonable man would have been unable to share it. He could not know

[232 N. Y. 176]          Opinion, per CARDOZO, J.                    [Nov.,

the precise point at which his cousin had fallen from the car. If the fall was from the bridge, there was no reason why the body, caught by some projection, might not be hanging on high, athwart the tie rods or the beams. Certainly no such reason was then apparent to the plaintiff, or so a jury might have found. Indeed, his judgment was confirmed by the finding of the hat. There was little time for delay, if the facts were as he states them. Another car was due, and the body, if not removed, might be ground beneath the wheels. The plaintiff had to choose at once, in agitation and with imperfect knowledge. He had seen his kinsman and companion thrown out into the darkness. Rescue could not charge the company with liability if rescue was condemned by reason. "Errors of judgment," however, would not count against him, if they resulted "from the excitement and confusion of the moment" (*Corbin* v. *Philadelphia,* 195 Penn. St. 461, 472). The reason that was exacted of him was not the reason of the morrow. It was reason fitted and proportioned to the time and the event.

Whether Herbert Wagner's fall was due to the defendant's negligence, and whether plaintiff in going to the rescue, as he did, was foolhardy or reasonable in the light of the emergency confronting him, were questions for the jury.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., HOGAN, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.