Luis F. Arroyo, Plaintiff and Appellee, *v.* Angela Caldas et al., Defendants and Appellants.

No. 9564.   Argued January 15, 1948.—Decided April 29, 1948.

*Daniel Pellón Lafuente* for appellants. *Juan B. Soto* and *Juan F. Soto* for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

This action was brought by Luis F. Arroyo, in his capacity as legal representative of the conjugal partnership, to recover damages for injuries sustained by his wife América González, which were caused, according to him, by defendants' negligence in failing to comply with their duties as landlords.

The defendants are owners of a house situated in the city of San Juan on which a penthouse was built which opens to the roof. For several years Ricardo Ramos and his wife, María González, América's sister, were living in the penthouse as tenants.

Prior to January 15, 1943 the Arroyo-González, a married couple, came to live in the penthouse as guests of the Ramos. On that day a child two and one-half years of age, the daughter of the cook, was running on the roof in the direction of a skylight which was covered by a glass that had been cracked for the last two or three months. Lest the child should step on the broken glass and fall through the skylight, Mrs. Arroyo hurriedly ran to stop her and avoid the accident. She succeeded in turning the child away from the danger, but unfortunately she slipped near the skylight and upon stepping on the glass covering it, smashed it, her legs falling through the opening where she was caught hanging by her hips. As a result of the accident she suffered injuries and bruises on her legs.

The alleged negligence of the defendants—who resided outside of Puerto Rico—consists in that the tenants, on three or four occasions, had notified them, through the superintendent of the house, of the bad condition of the skylight and although they had promised to have it repaired, they never did.

The defendants deny that the superintendent received any notice whatsoever to that effect. Besides, they maintain that·

even assuming that he did receive notice, they are not liable for the omission of the superintendent, because the latter is not among the persons for whose acts or omissions another person is responsible under § 1803 of the Civil Code.[1]  Lastly, they allege as a defense, that in any event, the proximate cause of the accident was not their negligence but the contributory negligence of the injured person.

The lower court found that the superintendent was timely notified of the bad condition of the skylight; that the proximate cause of the accident was defendants' negligence in failing to repair it, and that the injured person was not guilty of contributory negligence.  After finding that the damages had been proved, although not to the extent claimed, it rendered judgment for plaintiff, awarding $2,500 for damages plus $500 as attorney's fees.  Defendants appealed.

■■ Section 1803 of the Civil Code on which defendants rely is inapposite.  It is inapposite because this Section is a sequel to § 1802 which is confined to the fault or negligence without there existing a prior obligation or a contract.  The fault or negligence which § 1802 contemplates is that which gives rise to actions which, up to the publication of the Spanish Civil Code, were known by the text writers and the cases under the Spanish Law by the name of *quasi-delicto* and formerly, in Common Law, as actions *ex delicto*.  In such cases that is, under § 1802, no prior obligation exists between

---

[1] Section 1803 of the Civil Code provides:

"The obligation imposed by the preceding section is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.

"The father, and on his death or incapacity the mother, is liable for the damages caused by the minors who live with them.

"Guardians are liable for the damages caused by minors or incapacitated persons who are under their authority and live with them.

"Owners or directors of an establishment or enterprise are equally liable for the damages caused by their employees in the service of the branches in which the latter may be employed or on account of their duties, [and the owners or proprietors of any motor vehicle used for the private service of its owner or proprietor, are also liable for the damages caused by the operation of same by their employees or agents duly authorized to drive said vehicles, and while they

the person causing the damage and the one receiving it. Manresa, *Comentarios al Código Civil Español,* vol. 12 (2nd ed. 1911) pages 611 *et seq.* When the prior obligation exists, § 1054 of the Civil Code applies. It reads:

"Those who in fulfilling their obligations are guilty of fraud, negligence or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby."

In the instant case a prior obligation existed, the one imposed on every landlord by § 1444 of the Civil Code [2] which in its pertinent part reads:

"The lessor is obliged:

"1.—* * * * * * *

"2.—To make thereon, during the lease, all the necessary repairs in order to preserve it in condition to serve for the purpose to which it was destined."

Construing this same provision of the Spanish Civil Code. Manresa says:

"The obligation to repair shall arise, therefore, from the relationship which may rationally exist between the need of repair and the practicable possibility of the utilization that the lessee might give the thing; and if this relationship is logically established, no matter what part of the thing is affected by the repair, it shall have to be made by the lessor." Manresa, *Comentarios al Código Civil Español,* Vol. 10 (2nd ed. 1908) page 518.

act in the performance of their duties as such employees or agents, in accordance with the terms of their work contract.]

"The State is liable in this sense when it acts through a special agent, but not when the damage should have been caused by the official to whom properly it pertained to do the act performed, in which case the provisions of the preceding section shall be applicable.

"Finally, masters or directors of arts and trades are liable for the damages caused by their pupils or apprentices while they are under their custody.

"The liability referred to in this section shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid the damage." Matter within brackets was added by Act No. 120 of May 12, 1943 (page 372).

[2] Section 1444 was amended by Act No. 220 of May 12, 1942 (page 1176). But the amendment merely added subdivision 4, which says:

"To sign and deliver to the lessee a receipt for each payment made by the latter."

■ In his answer to the second amended complaint, the defendants expressly admitted that the use of the roof top was included and formed part of the lease of the penthouse. The tenants and their guests were therefore entitled to walk freely on the roof, and if the skylight was in bad condition, it meant serious danger for them.

■ As to the notice sent to the superintendent, the evidence was contradictory. That for the defendants consisted in the testimony of the superintendent. That for the plaintiff in the testimony of the tenant's cook. The latter stated that on three or four occasions, by order of the tenant, she had notified the superintendent of the bad condition of the skylight and had asked him to repair it; that he promised to repair it; that she notified him for the last time a month and a half before the accident but he never did it.

As we have pointed out the defendants refuse to accept any responsibility for the notice to the superintendent. But the latter, by reason of his employment, was the representative or agent of the defendants and since they resided outside of Puerto Rico, the lessee was not bound to notify any other person but him and thus comply with the obligation imposed by § 1449 of the Civil Code, which insofar as pertinent, reads:

"[The lessee] is obliged to give notice to the owner with the least possible delay of any usurpation or injurious alterations which any other person may have made or openly is preparing to make to the thing leased."

■ We shall now pass on the question of whether defendants' negligence in failing to comply with the obligation imposed on them by § 1444 was the proximate cause of the accident. Under ordinary circumstances it would seem that the injured person was guilty of contributory negligence for she stated that long before the accident she was familiar with the bad condition of the skylight and the accident took place during the daytime, but there exists a well-settled exception to the rule of contributory negligence to the effect that when

a person sees someone in imminent and serious danger by negligence of another, he is not guilty of contributory negligence if, in trying to save the person in peril, receives an injury, unless the rescuer, in doing so, acts wantonly and deliberately. As Judge Cardozo says in *Wagner* v. *International Ry. Co.*, 133 N. E. 437 (N. Y., 1921) 19 A.L.R. 1:

"Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim. It is a wrong also to his rescuer. The state that leaves an opening in a bridge is liable to the child that falls into the stream, but liable also to the parent who plunges to its aid. (Authorities.) The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path. (Authorities.) The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had. (Authorities.)"

In *Gibney* v. *State*, 137 New York 1 (1893), 33 N.E. 142, cited with approval in *Wagner* v. *International Ry. Co.*, *supra*, a child, while crossing a bridge, fell through an opening in the railing, negligently left without any warning of danger. The father plunged into the water to rescue his son and both were drowned. It was decided that the unsafe condition of the bridge was, from the legal viewpoint, the cause of the father's death as well as that of his son, and that an award could be obtained for the death of the former because the bridge was left in a dangerous condition. See, also, Restatement, Torts, § 472; Annotations in 19 A.L.R. 4 and 158 A.L.R. 189; Bohlen & Harper on Torts, § 126, page 278; 16 Fordham L. Rev. 139 (1947).

■ We have solely to decide now whether the lower court acted correctly in awarding $2,500 for damages and $500 for attorney's fees.

Dr. A. Oliveras, who treated the injured lady immediately after the accident, testified that he was called one afternoon to the house of Mrs. Arroyo because as a result of an accident she had received bruises and wounds; that the patient showed bruises on the elbows, the hips, the thighs and in her legs, and a wound in the external part of the left leg; that all the bruises were bleeding; that she was in a state of traumatic shock and in such great pain that she could hardly speak; that he treated her for two weeks only. In answer to a question as to the possible future consequences of the injuries received he stated that they might or might not have serious consequences; that they might produce an hernia in any abdominal viscera, including the bladder.

Dr. Biascoechea, who examined her on March 26, 1946, three years after the accident, testified that the patient complained of an acute pain in the lumbar region and in her right knee; that he took some X-ray photographs to determine the cause of that pain and they showed an ostearthritis of the lumbar vertebrae and of the right knee. With the X-ray photographs in his hand he showed the ostearthritis in the vertebrae and in the knee. He also testified that the X-ray photographs were taken by doctors Landrón Becerra and Ramos Casellas to whom he sent her on March 21, 1946; that traumatism is one of the causes of the osteoarthritis; that he has seen thousands of cases of traumatism in workmen and private patients many of whom had arthritis of the same nature as the patient's, due to falls; that he examined her and she presented no focus of infection in the tonsils, and as far as his examination went, he found no other cause for the osteoarthritis; that since the patient did not report any other traumatism he was of the opinion that the osteoarthritis which she now presented could have been caused by the fall. That the process for the formation of the osteoarthritis is slow and takes from one to ten years to develop.

The injured person also testified that since the day of

the accident she has not been feeling well but that she was a healthy person prior to that day.

We see no reason for disturbing the conclusion of the lower court as to the amount of the compensation. It is true that the lower court committed error in finding that the injured lady had to undergo an operation of the bladder for there is no evidence whatsoever in the record to support that conclusion; but be it as it may, irrespective of this alleged operation, the damages proved warrant the award granted.

As to the imposition of attorney's fees, we do not feel justified either, under the circumstances of this case, to disturb the discretion of the lower court in granting and fixing the amount it did.

Judgment is affirmed.