Luis F. Arroyo, demandante y apelado, v. Ángela Caldas y Palma, María, José Luis, María de los Ángeles y María del Rosario Sopelana Caldas, demandados y apelantes.

Núm. 9564.—*Sometido:* Enero 15, 1948.  *Resuelto:* Abril 29, 1948.

*Daniel Pellón Lafuente,* abogado de los apelantes; *Juan B. Soto* y *Juan F. Soto,* abogados del apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Esta acción fué instituída por Luis F. Arroyo, en su carácter de representante legal de la sociedad conyugal, en reclamación de daños y perjuicios por lesiones recibidas por su esposa América González, causadas, según se alega, por la negligencia de los demandados en el cumplimiento de sus obligaciones como arrendadores.

Los demandados son dueños de una casa radicada en la ciudad de San Juan sobre la cual han levantado un mirador con acceso a la azotea. Hace varios años Ricardo Ramos y su esposa María González, hermana de América, ocupaban el mirador en calidad de inquilinos.

Con anterioridad al 15 de enero de 1943 los esposos Arroyo González vinieron a vivir al mirador en concepto de invitados de los esposos Ramos González. En dicha fecha una niña de dos años y medio de edad, hija de la cocinera de la casa, corría por la azotea con dirección a un tragaluz que hacía dos o tres meses tenía astillado el vidrio que lo cubría. Temerosa la señora Arroyo de que la niña fuese a pisar el cristal roto y caer por el tragaluz, corrió a toda prisa para darle alcance y evitar el accidente. Logró desviarla del peligro, pero tuvo la mala suerte de resbalar cerca del tragaluz y al pisar el vidrio que lo cubría, lo destrozó penetrando sus

piernas por el hueco y quedando suspendida por las caderas. Como resultado del accidente recibió heridas y laceraciones en las piernas.

La alegada negligencia de los demandados—los cuales residían fuera de Puerto Rico—consiste en que en tres o cuatro ocasiones fueron notificados, a través del administrador de la casa, del mal estado en que se hallaba el tragaluz, y no obstante haber ofrecido repararlo, nunca lo hicieron.

Los demandados niegan que el administrador hubiera recibido aviso alguno a ese efecto. Sostienen, además, que en la hipótesis de que lo hubiera recibido, no son ellos responsables de la omisión del administrador, por no estar éste comprendido entre las personas por cuyos actos u omisiones debe responderse con arreglo al artículo 1803 del Código Civil. (¹) Finalmente, alegaron como defensa que en todo caso la causa próxima del accidente no fué su negligencia, sino la negligencia contribuyente de la damnificada.

La corte inferior declaró probado que el administrador fué oportunamente notificado del mal estado del tragaluz; que la causa próxima del accidente fué la negligencia ·de los demandados al no repararlo y que la damnificada no fué culpable de negligencia contribuyente. Estimando probados los daños, aunque no en la extensión reclamada, dictó sentencia a

---

(¹)El artículo 1803 del Código Civil prescribe:

"La obligación que impone el artículo anterior es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

"El padre, y por muerte o incapacidad de éste, la madre, son responsables de los perjuicios causados por los hijos menores de edad que viven en su compañía.

"Los tutores lo son de los perjuicios causados por los menores o incapacitados que están bajo su autoridad y habitan en su compañía.

"Lo son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones, [y los dueños o propietarios de cualquier vehículo de motor destinado al servicio privado de su dueño o propietario respecto de los perjuicios que causen en la operación de los mismos sus empleados o agentes, debidamente auto-

favor del demandante por $2,500 de indemnización, más $500 por concepto de honorarios de abogado. De esta sentencia apelaron los demandados.

■■ El artículo 1803 del Código Civil invocado por los demandados no tiene aplicación al presente caso. No la tiene porque este artículo es una secuela del 1802, cuyo radio de acción está limitado a la culpa o negligencia no relacionada con una obligación anterior y sin ningún antecedente contractual. La culpa o negligencia a que se refiere el artículo 1802 es la que da lugar a aquellas acciones que, hasta la publicación del Código Civil Español, se conocían en el Derecho Español por los tratadistas y la jurisprudencia con el nombre de cuasidelitos y antiguamente en la Ley Común se denominaban acciones *ex delicto*. En tales casos, es decir, bajo el artículo 1802, entre el causante del daño y el que lo recibe, no existe una obligación anteriormente contraída. Manresa, Comentarios al Código Civil Español, t. 12 (2da. ed. 1911), pág. 611 *et seq*. Cuando la obligación anterior existe, el precepto aplicable es el artículo 1054 del Código Civil que dice:

"Quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas."

---

rizados para el manejo de dichos vehículos, y mientras actúen en el desempeño de sus funciones como tales empleados o agentes de acuerdo con los términos del contrato de trabajo.]

"El Pueblo de Puerto Rico es responsable en este concepto cuando obra por mediación de un agente especial; pero no cuando el daño hubiese sido causado por el funcionario a quien propiamente corresponda la gestión practicada, en cuyo caso será aplicable lo dispuesto en el artículo anterior.

"Son, por último, responsables los maestros o directores de artes y oficios respecto a los perjuicios causados por sus alumnos o aprendices, mientras permanezcan bajo su custodia.

"La responsabilidad de que trata este artículo cesará cuando las personas en él mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño."

La parte entre corchetes fué adicionada por la Ley núm. 120 de 12 de mayo de 1943 (pág. 373).

En el presente caso existía una obligación anterior, la impuesta a todo arrendador por el artículo 1444 del Código Civil (²) que en lo pertinente dice:

"El arrendador está obligado:

"1.— .        .        .        .        .        .

"2.—A hacer en ella durante el arrendamiento todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada."

Interpretando el mismo precepto del Código Civil Español, dice Manresa:

"La obligación de reparar surgirá, pues, de la relación que racionalmente exista entre la necesidad del reparo y la posibilidad práctica del uso de la cosa por el arrendatario; y si esa relación lógicamente llega a establecerse, sea la que fuese la parte de la cosa a que la reparación afecte, tendrá que verificarla el arrendador." Manresa, Comentarios al Código Civil Español, t. 10 (2da. ed. 1908), pág. 518.

En su contestación a la segunda demanda enmendada los demandados expresamente admitieron que el uso de la azotea estaba incluído y formaba parte del arrendamiento del mirador. Así pues los inquilinos y sus invitados tenían el derecho de caminar libremente por la azotea, y si el tragaluz estaba en malas condiciones, éste implicaba un grave peligro para ellos.

En lo que respecta a la notificación al administrador, la prueba fué contradictoria. La de los demandados consistió en el testimonio del administrador. La del demandante en la declaración de la cocinera de la casa. Ésta afirmó que en tres o cuatro ocasiones, por orden de la inquilina, avisó al administrador del mal estado en que se hallaba el tragaluz

---

(²)El artículo 1444 fué enmendado por la Ley núm. 220 de 12 de mayo de 1942 (pág. 1177). Pero la enmienda se limitó a adicionar el inciso 4 que dice así:

"A suscribir y entregar al arrendatario un recibo por cada pago hecho por éste."

y lo requirió para que lo reparase; que él prometió hacer la reparación; que el último aviso lo dió mes y medio antes del accidente y que nunca se hizo.

Ya hemos visto que los demandados rechazan responsabilidad por la notificación al administrador. Pero éste, por razón de su cargo, era el representante o mandatorio de los demandados, y hallándose ellos fuera de Puerto Rico, a ninguna otra persona sino a él, venía obligado el arrendatario a dar el aviso correspondiente para cumplir así con la obligación que le impone el art. 1449 del Código Civil, que en lo pertinente, dice:

"También está obligado [el arrendatario] a poner en conocimiento del dueño, con la misma urgencia, la necesidad de todas las reparaciones comprendidas en el número 2 del Artículo 1444."

Pasemos a determinar ahora si la negligencia de los demandados en el cumplimiento de la obligación impuéstales por el artículo 1444 fué la causa próxima del accidente. En circunstancias ordinarias parecería que la damnificada fué culpable de negligencia contribuyente, pues ella declaró que tenía conocimiento desde mucho antes de la fecha del accidente, del mal estado en que se hallaba el tragaluz y el accidente ocurrió de día. Pero existe una bien establecida excepción a la regla de negligencia contribuyente, y ésta es al efecto de que cuando la persona ve a alguien en inminente y grave peligro por la negligencia de otra, no puede imputársele negligencia contribuyente si, al tratar de salvar a la persona en peligro, recibe un daño, a menos que el rescatador, al así hacerlo, haya actuado temeraria e imprudentemente. Como dijo el Juez Cardozo en *Wagner* v. *International Ry. Co.,* 133 N.E. 437 (N.Y., 1921), 19 A.L.R. 1:

"El peligro invita al rescate. El grito de zozobra es la llamada de auxilio. La ley no ignora estas reacciones de la mente al juzgar la conducta y sus consecuencias. Las considera como normales. Coloca sus efectos dentro del ámbito de lo natural y probable. El mal que pone en peligro la vida, es un mal a la víctima amena-

zada; también es un mal contra su rescatador. El estado que deja un hueco en un puente es responsable al niño que cae por él al agua, también lo es al padre que se lanza en su auxilio. '(Citas). La compañía de ferrocarriles cuyo tren se aproxima sin dar señal de aviso realiza un acto torticero contra el viajero sorprendido entre los raíles; también lo realiza contra el circunstante que lo saca del peligro. (Citas). El riesgo del rescate, a menos que el rescatador sea imprudente, es hijo de la ocasión. La emergencia hace al hombre. Es posible que el que hizo el daño no haya podido prever la presencia del rescatador. Él es responsable como si lo hubiera previsto. (Citas)."

En el caso de *Gibney* v. *State,* 137 New York 1 (1893), 33 N. E. 142, citado con aprobación en el de *Wagner* v *International Ry. Co.,* supra, un niño mientras pasaba por un puente, cayó por un roto en el piso, negligentemente dejado sin aviso que llamase la atención del peligro. El padre se lanzó al agua a rescatar al hijo y ambos perecieron ahogados. Se resolvió que la mala condición del puente era, desde el punto de vista legal, la causa de la muerte del padre, así como de la del hijo, y que podría obtenerse indemnización por la muerte de aquél, por haberse dejado el puente en una condición peligrosa. Véanse, además, *Restatement, Torts,* sec. 472; Monografías en 19 A.L.R. 4 y 158 A.L.R. 189; Bohlen & Harper *on Torts,* sec. 126, pág. 278; 16 *Fordham L. Rev.* 139 (1947).

Sólo nos resta determinar ahora si actuó correctamente la corte inferior al conceder $2,500 de indemnización y $500 por concepto de honorarios de abogado.

El Dr. A. Oliveras, quien asistió a la damnificada inmediatamente después del accidente, declaró que fué llamado una tarde a ver a la señora Arroyo a su casa con motivo de un accidente que había sufrido, a consecuencias del cual había recibido contusiones y heridas; que la paciente presentaba contusiones con erosiones en los codos, en las caderas, en los muslos y en las piernas y una herida en la parte externa de la pierna izquierda; que sangraba por todas las laceraciones que presentaba; que además estaba en un estado de *shock*

traumático y tan adolorida que apenas podía expresarse; que la estuvo asistiendo por dos semanas y luego dejó de asistirla. Contestando una pregunta sobre las posibles consecuencias ulteriores de las lesiones recibidas dijo que podían o no tener consecuencias muy graves, que podían producir una hernia de cualquier víscera abdominal, incluyendo la vejiga.

El Dr. Biascoechea, quien la examinó el 26 de marzo de 1946, tres años después del accidente, declaró que la paciente acusaba un fuerte dolor en la región lumbar y rodilla derecha; que se le tomaron radiografías para determinar la causa de ese dolor y éstas revelaban una osteoartritis de las vértebras lumbares y de la rodilla derecha. Con las radiografías a la vista mostró la osteoartritis que existía en las vértebras y en la rodilla. Declaró, además, que las radiografías fueron tomadas, por dirección suya, por los Doctores Landrón Becerra y Ramos Casellas el 21 de marzo de 1946; que una de las causas de la osteoartritis es el haber recibido un traumatismo; que ha visto miles de casos de traumatismo de obreros y pacientes particulares y muchos de ellos con artritis de la índole que presentaba la paciente, producida por caídas; que la examinó y no tenía focos de infección en las amígdalas, y hasta donde pudo examinar, no encontró ninguna otra causa para la osteoartritis; que no habiéndole hecho la paciente relación de ningún otro traumatismo, era de opinión que la osteoartritis que ahora presentaba ella pudo ser causada por la caída; que el proceso para la formación de la osteoartritis es lento y toma de uno a diez años en desarrollarse.

También declaró la damnificada que desde que sufrió el accidente venía sintiéndose mal y que antes de esa fecha era una persona saludable.

No vemos motivos para alterar la conclusión a que llegó la corte inferor en cuanto al montante de los daños. Es verdad que la corte inferior incurrió en error al declarar que la damnificada había tenido que sufrir una operación de la vejiga, pues no hay evidencia alguna en el récord que sos-

tenga esa conclusión; pero sea ello como fuere, independientemente de esa supuesta operación, los daños probados justifican la cuantía concedida.

■ En cuanto a la condena de honorarios de abogado, tampoco estamos justificados, dentro de las circunstancias de este caso, en intervenir con la discreción de la corte inferior al concederlos y fijarlos en la cuantía en que lo hizo.

*Procede la confirmación de la sentencia apelada.*