## Truitt, Sr. v. Hays

*Milton W. Rosen* and *Laurence H. Eldredge*, for plaintiff.

*Dale & Woodward*, for defendants.

BREENE, P. J., February 28, 1963. — This is an action in trespass to recover damages for personal injuries sustained October 5, 1961. We now have for consideration preliminary objections in the nature of a demurrer filed by defendants, Clinton A. Hays and Lois Hays, under Pennsylvania Rules of Civil Procedure 1017(b)(4), asking this court to rule as a matter of law that the complaint does not set forth a legal cause of action.

In adjudicating the questions raised, every material and relevant fact sufficiently pleaded in the complaint

and every inference deducible therefrom are to be taken as true: Yania v. Bigan, 397 Pa. 316 (1959). However, a demurrer admits only material allegations of fact well and clearly pleaded, and not conclusions therefrom or averments of law: Todd v. Skelly, 384 Pa. 423 (1956).

A judgment is to be entered only in clear cases and is not to be entered against a plaintiff if the pleadings indicate that he could state a better case by amendment. See Goodrich-Amram, Procedural Rules Service, §1017 (b) 11, page 93, where two rules are set forth respecting the entry of summary judgment on demurrer, as follows:

1. "The question to be decided is not whether the statement of his claim is so clear in both form and specification as to entitle plaintiff to proceed to trial without amending it, but whether, upon the facts averred, it shows with certainty that the law will not permit a recovery by plaintiff.

2. "Where a doubt exists as to whether or not summary judgment should be entered, this should be resolved in favor of refusing to enter it."

Defendants made no motion for a more specific pleading.

We believe the preliminary objections filed by Clinton A. Hays and Lois Hays, herein designated "defendants," involve the questions now discussed:

I. Does the complaint of plaintiff aver a legal cause of action against defendants?

The complaint avers that on October 5, 1961, John E. Ruth, an employe of defendants, was engaged in the course of, and within the scope of, his employment in cutting down a tree on defendants' premises, using a gasoline-powered saw; plaintiff, Miles H. Truitt, Sr., employed by defendants to assist Ruth, was nearby. Truitt saw Ruth in imminent peril of being struck by the falling tree, rushed to his assistance, and succeeded

in pushing the tree to one side, but, in the course of doing so, his right leg came in contact with the power saw which inflicted injuries upon him. The complaint also avers that Ruth cut the tree in such a careless or negligent manner as to cause it to fall towards him.

Defendants contend that negligence has not been properly and adequately pleaded.

The complaint must contain a full disclosure of all the material facts and details of the respective claims, and it must give defendant such clear and exact information of the charges against him as will be sufficient to inform him what acts or omissions plaintiff charges him with, so that he can produce evidence at the trial to explain or deny the allegations of the complaint. Mere general averments of negligence, averments of carelessness, or that defendant acted in a reckless, carless and negligent manner, without stating what defendant did, or omitted to do, which amounted to a breach of duty owing to plaintiff, do not conform to the requirements of proper pleadings and are insufficient if objected to. See 3 Standard Pa. Pract., pages 468, 469.

The complaint alleges that Ruth, acting in the course of his employment by defendants, cut the tree in such a careless and negligent manner as to cause it to fall towards him. In other words, Ruth was negligent in cutting the tree in such a manner as to cause it to fall towards him and thereby expose himself to the risk of being injured when it fell. Ruth was required to foresee that if he acted in such a manner as to imperil himself, he might also be imperiling others who were drawn into the danger area in an effort to rescue him.

We conclude the allegations in the complaint give defendants reasonable and sufficient information of the charges against them and that negligence has been adequately pleaded.

Defendants also contend the complaint does not aver

a cause of action in the absence of active negligence of defendants as distinguished from imputed negligence.

The general statement of the law applicable to rescue is found in 38 Am. Jur. Negligence § 80:

"Attempt to Save Person Exposed to Peril.— The law does not ignore the reactions of the mind in tracing conduct to its consequences but recognizes as normal the inclination to answer a cry of distress by attempting to rescue the stricken one from his peril, and a wrongdoer may be held accountable for an injury sustained in an attempt to rescue his victim, although he may not actually have foreseen the attempt. Consequently, negligence that imperils life may be a wrong to the rescuer as well as to the imperiled victim. It seems to be well settled that where one person is exposed to peril of life or limb by the negligence of another, the latter will be liable in damages for injuries received by a third person in a reasonable effort to rescue the one so imperiled. The proximate cause of the injury in such a case is the negligence which caused the peril, provided the intervention to effect a rescue is not a rash or clearly imprudent act. An owner of premises who creates thereon a condition dangerous to children is liable to a third person who goes to the rescue of a child imperiled by such condition, where, under the circumstances, including the attractive and alluring nature of the condition, the owner was obligated to use ordinary care to prevent injury to the child from such danger. Thus, where a child falls into a canal through the culpable negligence of state officers or employees, and its father thereupon plunges into the canal in an attempt to rescue his child and both are drowned, the death of both is a consequence of such negligence, and where the state has voluntarily assumed liability for the negligence or misfeasance of its officers or employees and has consented to be sued, it is answerable for the death of the father as well as

that of the child. The fact, moreover, that a rescuer acted after having weighed the situation to determine whether he should follow his impulse to save the defendant's imperiled victim does not break the continuity between the defendant's negligence and the injury to the rescuer. While an attempt to rescue a person from a peril created by another's negligence does not charge the negligent person with liability if it was condemned by reason, and a rescuer who has been injured can be deprived of a recovery from the person responsible for the peril, on the ground that the dangers and desperate character of his act rendered him guilty of contributory negligence, errors of judgment are to be weighed in view of the excitement and confusion of the moment in determining whether the rescuer acted without rashness or imprudence."

The foregoing principles were applied in the case of Corbin v. Philadelphia, 195 Pa. 461 (1900), and also in the case of Toner v. Pennsylvania R. R. Co., 263 Pa. 438 (1919).

In the Toner case, the facts were that two boys, 8 and 10 years of age, were playing on defendant's railroad tracks. Plaintiff saw defendant's unlighted train proceeding toward the children without warning. After calling a warning, which was ignored, plaintiff rushed onto the truck and succeeded in throwing both boys to safety but was himself struck. The Supreme Court, in the opinion by Mr. Justice Simpson, held that defendant had been negligent not only to the boys on the track but also to plaintiff, and said:

"The trial judge charged the jury that if the defendant by its negligence put the two boys in serious danger of life or limb, knowing children were in the habit of playing on the tracks, that plaintiff received the injury of which he complains in an endeavor to rescue the boys from the danger in which they were placed by

defendant's negligence, and the risk which plaintiff took did not appear so hazardous as to be condemned by the judgment of a prudent person, he might recover; but if any of these elements were missing the verdict should be for the defendant. This charge is in exact accord with our decision in Corbin v. Philadelphia, 195 Pa. 461; and defendant, therefore, asks us to reconsider the conclusion which we there announced. Further consideration, however, has only confirmed our opinion that what we there said is founded on both reason and authority, and hence we reaffirm it."

In Wagner v. International Ry. Co., 232 N. Y. 176, 133 N.E. 437, 19 A.L.R. 1 (1921), Judge Cardozo stated:

"Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperilled victim; it is a wrong also to his rescuer. The state that leaves an opening in a bridge is liable to the child that falls into the stream, but liable also to the parent who plunges to its aid (Gibney v. State of N. Y., 137 N. Y. 1). The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path (Eckert v. L.I.R.R. Co., 43 N. Y. 502. Cf. Matter of Waters v. Taylor Co., 218 N. Y. 248). The rule is the same in other jurisdictions (Dixon v. N.Y.N.H. & H.R.R. Co., 207 Mass. 126, 130, and Bond v. B. & O. R. R. Co., 82 W. Va. 557, with cases there cited. Cf. 1 Beven on Negligence, 157, 158). The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is account-

able as if he had (Ehrgott v. Mayor, etc., of N. Y., 96 N. Y. 264, 280, 281)."

However, defendants claim that factual differences distinguish the cases cited from the present case. In the cases cited, defendant, by his negligence, placed A in danger and plaintiff was injured in attempting to rescue A; plaintiff and A each have a cause of action against defendant. In the present case, Ruth, an employe of defendants, by his own negligence, placed himself in danger and plaintiff was injured in attempting to rescue Ruth; here, there was no active negligence on the part of defendants and the negligence of Ruth would not sustain an action by him against defendants.

Counsel in their briefs have not cited, and we have not found, any case on "all fours" with the present one. However, we believe this factual difference is of no legal significance. Is plaintiff to be precluded from asserting a cause of action against defendants by reason of the fact Ruth, the negligent agent of defendants, cannot assert a cause of action against defendants? We believe not, and we conclude the negligence of Ruth is imputed to defendants.

The fellow servant rule of the common law was modified by the Act of June 10, 1907, P. L. 523, 43 PS §§171, 172, section 2 of which provides that the person in charge or control of the works shall be held as an agent of the employer in all suits for damages for death or injury suffered by employes.

The "Fellow Servant Doctrine" of the common law provides that an employer is not liable for injuries to his employe caused by the negligence of a fellow employe. Therefore, defendants contend that defendants, the employer, are not liable for injuries to Truitt caused by the negligence of Ruth, his fellow employe. However, the harshness of the fellow servant rule was mitigated by the Act of June 10, 1907, P. L. 523, sec. 1, 43 PS §171: this provided, inter alia, that the fellow servant

rule should not be applicable where the so-called fellow servant was a "person in charge of or directing the particular work in which the employee was engaged at the time" he was injured or killed.

Plaintiff contends the Act of 1907, supra, makes the common law fellow servant rule inapplicable to the facts of this case, since Ruth was in charge of the work.

In Feeney v. Abelson, 49 Pa. Superior Ct. 163, (1912), with reference to section 1 of the Act of 1907, supra, the court said it related "to a situation in which there is the relation of superior and inferior of an employee and another exercising control and directing the manner in which the action shall be performed. It was not intended that liability should be created except in the case of results happening through the exercise of superintendency. The consequences of the negligence of the persons of the classes named are visited on the employer because such negligence is that of a representative of the employer—the vice principal as to the particular transaction. The statute does not cover the case of coemployees engaged in the accomplishment of a common object where the negligence of one results in injury to another." See also Reeser v. Metropolitan Electric Co., 246 Pa. 24 (1914); Anderson v. Keystone Type Foundry, 253 Pa. 510 (1916).

Paragraph 3 of the complaint avers defendants orally employed John E. Ruth to do certain work on said premises, 209 Maple Avenue, which consisted of cutting and removing certain trees and brush.

Paragraph 5 avers that, in the course of performing said work, Ruth informed defendant, Clinton A. Hays, that he needed some help in order to complete the work and suggested that plaintiff be employed by Dr. Hays and his wife to assist Ruth in completing the work in which Ruth was engaged. Clinton A. Hays orally authorized Ruth to obtain the assistance of plaintiff and orally agreed to pay him for such assistance.

We are unable to agree with plaintiff that reasonable inferences from said allegations are that Ruth was in charge of the work and that plaintiff was his assistant and subject to his direction and control. Although the question whether Ruth was in charge of the work and, therefore, a vice principal under the Act of 1907 or a fellow servant may well be for the jury, this does not remedy what we deem an inadequate averment in the complaint. If Ruth was not in charge of or directing the particular work in which Truitt was engaged at the time he was injured, there can be no liability of defendants to Truitt, and the demurrer must be sustained; however, we will grant plaintiff leave to amend this allegation of his complaint.

II. Is plaintiff precluded from recovery by reason of his voluntary act, which was the sole cause or a contributing cause of the injuries sustained?

Paragraph 8 of the complaint alleges that plaintiff saw Ruth in imminent peril of being struck by a falling tree, rushed to his assistance and, in the course of doing so, came in contact with the gasoline-powered saw.

The Supreme Court of Pennsylvania in the case of Corbin v. Philadelphia, 195 Pa. 461 (1900), at page 468, said:

"Assuming the city to have been guilty of negligence, was the conduct of Corbin such, in going to the rescue of Walker, as to prevent a recovery by the plaintiff? In other words, is she debarred from recovery because her son was guilty of contributory negligence in voluntarily incurring peril in an effort to save the life of Walker, which had been endangered by the negligence of the city? This is an interesting and most important question, but free from difficulty, in the light of reason and the thoughtful consideration it has received from many high tribunals. A rescuer, one who, from the most unselfish motives, prompted by the

noblest impulses that can impel man to deeds of heroism, faces deadly peril, ought not to hear from the law words of condemnation of his bravery, because he rushed into danger, to snatch from it the life of a fellow creature, imperiled by the negligence of another; but he should rather listen to words of approval, unless regretfully withheld on account of the unmistakable evidence of his rashness and imprudence. This conscience and reason approve, and the best judgment of thoughtful and intelligent judges has declared it to be the law of the land. Relying, as we safely can, upon the considerate judgment of other courts on this important question raised before them, we cannot better dispose of it than by calling attention to what they have said, adding in every case our approval of what was declared to be the reason of the law as announced."

In Wagner v. International Railway Company, 232 N. Y. 176, 133 N. E. 437, 19 A. L. R. 1, (1921), the facts were that plaintiff and his cousin, Herbert, boarded a car stationed near the bottom of a trestle and stood on the platform because of the crowded condition of the car.

As the car violently lurched while rounding a curve, Herbert was thrown out. The car went on across the bridge and stopped near the foot of the incline. Night and darkness had come on. Plaintiff walked along the trestle, a distance of 445 feet, until he arrived at the bridge, where he thought to find his cousin's body. He missed his footing and fell. Defendant argued that plaintiff's voluntary conduct broke the chain of causation and relieved defendant of liability. Judge Cardozo answered this as follows, page 180:

"The defendant says that we must stop, in following the chain of causes, when action ceases to be 'instinctive.' By this, is meant, it seems, that rescue is at the peril of the rescuer, unless spontaneous and immediate. If there has been time to deliberate, if

impulse has given way to judgment, one cause, it is said, has spent its force and another has intervened. In this case, the plaintiff walked more than 400 feet in going to Herbert's aid. He had time to reflect and weigh; impulse had been followed by choice; and choice, in the defendant's view intercepts and breaks the sequence. We find no warrant for thus shortening the chain of jural causes. We may assume, though we are not required to decide, that peril and rescue must be in substance one transaction; that the sight of the one must have aroused the impulse to the other; in short that there must be unbroken continuity between the commission of the wrong and the effort to avert its consequences. If all this be assumed, the defendant is not aided. Continuity in such circumstances is not broken by the exercise of volition . . . The law does not discriminate between the rescuer oblivious of peril and the one who counts the cost. It is enough that the act, whether impulsive or deliberate, is the child of the occasion."

In their brief, defendants acknowledge that plaintiff, the rescuer, is not to be adjudicated guilty of contributory negligence as a matter of law and recognize that in Pennsylvania:

"1. A person who as rescuer subjects himself to peril and possible danger in an effort to protect another from death or bodily harm is not guilty of contributory negligence provided he does not act rashly and unnecessarily expose himself to the danger;

"2. A rescuer is not to be charged with errors of judgment that result from the excitement and confusion of the moment; and

"3. The question as to whether the rescuer acted rashly, or unnecessarily exposed himself to danger, are usually questions for the jury.

"Corbin v. Philadelphia, 195 Pa. 461, 472; Toner v. P.R.R., 263 Pa. 438, 440; Cooper v. Reading R. R., 370

Pa. 192, 194; Guca v. Pittsburgh Rys. Co., 367 Pa. 579, 584; DeGregorio v. Malloy, 356 Pa. 511, 514."

Defendants' third and fourth preliminary objections are dismissed.

*Order of Court*

And now, February 28, 1963, the demurrer on behalf of defendants is sustained, and this action shall be dismissed, unless plaintiff shall file an amended complaint in conformity with this opinion within 30 days from the date hereof.