OPINION OF THE COURT
William H. Keniry, J.
On April 20, 1987 at a construction site located on Loudon Road in the Town of Colonie, Albany County, five persons were injured. A large commercial building was under construction. An accident occurred during the erection of the two-story building’s steel frame. The building and land were owned by three individuals, an estate, and a partnership which will be collectively referred to as Walfred Associates (Walfred). The general contractor for the project was Barry, Bette and Led Duke, Inc. (BBL). The architect, retained by Walfred, was the Clover Architect Group, P. C. (Clover). The steel frame was being erected by Colonie Masonry Corporation of Albany, Inc. (Colonie Masonry), a subcontractor of BBL. Can-Am Steel Corporation (Can-Am) was a subcontractor of BBL and responsible for fabricating and supplying the steel components. Park Steel Company, Inc. (Park Steel) was a subcontractor to Can-Am and fabricated some of the steel components. Albany Crane Service, Inc. (Albany Crane) rented a crane and provided a crane operator to BBL which were utilized in the erection process.
At about 2:30 in the afternoon of April 20, 1987, Paul E. Dunham and Andrew L. Williams, ironworkers employed by Colonie Masonry, were working on the second floor roof when the partially completed steel frame collapsed without warning. Dunham and Williams were thrown from the roof. Dunham was pinned some 15 feet above the ground under bundles of roof decking. Williams fell to the ground. Both men were seriously injured.
Rescue efforts commenced immediately. Police, fire depart- *424 merits and emergency medical personnel promptly responded to the call for assistance and participated in the rescue work, along with construction personnel already on the scene. Williams was transported to the hospital. Dunham, however, was trapped in the wreckage. Extensive efforts were required to free him. Dunham was finally extricated at about 3:45 p.m. Just as he was being lifted into a bucket loader there was a second collapse. Three individuals who had responded to the scene were injured by falling steel and other debris. The three injured persons were Raymond Lemire, G. Scott Wright and Joseph S. Mahan, Jr. Lemire was a volunteer firefighter who participated in freeing Dunham. Wright was a member of a fire company but was not a trained firefighter. He was on the scene in his capacity as a fire photographer and was taking pictures of the accident and rescue efforts. Mahan was a Town of Colonie police officer who was engaged in crowd control.
The two injured construction workers and the three injured rescue workers, together with their spouses, have commenced actions against the defendants.* By stipulation, all five actions have been joined for trial. Causes of action are advanced against the various defendants in common-law negligence, violation of Labor Law §§ 200, 240 and 241, and in the cases of the rescue workers, under sections 205-a and 205-e of the General Municipal Law. Various cross claims and third- and fourth-party actions have been asserted by and between the defendants seeking indemnification and contribution.
Extensive pretrial discovery has taken place. A note of issue with a statement of readiness has been filed.
There are now some 12 motions and cross motions pending in which various parties seek summary judgment.
The court, before it begins to address the merits of the specific motions and the legal issues raised therein, will outline the facts in greater detail. The building under construction was a two-story retail office complex encompassing 26,700 square feet. The original budgeted cost of the building was $1,035 million. The building’s steel frame, as designed by Clover, consisted of structural steel members, steel joists and appropriate connectors. In early April 1987, the fabricated steel was delivered to the jobsite. Colonie Masonry had the subcontract to erect the steel. Williams and Dunham were ironworkers and part of the crew erecting the steel.
*425 After the steel was delivered to the jobsite, the Colonie Masonry ironworkers began erecting the steel. Problems were immediately noted. Subsequent deposition testimony has established that the steel as fabricated and erected failed to conform to the approved plans and shop drawings in several material respects. The defects were significant and the iron-workers were unable to properly and adequately bolt and/or affix the components as called for in the plans. The BBL on-site superintendent was immediately made aware of the problems. Colonie Masonry was ordered by BBL to proceed with the erection. The vertical steel columns and the tie joists could not be bolted together properly because the bolt holes in the column seats would not align with the bolt holes in the tie joists. Instead of using two bolts per side, the columns and tie joists were held together by only one bolt. The plans called for the use of 3/4-inch high strength bolts. But because the holes drilled in the column seats were incorrectly sized at 9/16 inch rather than 13/16 inch, the 3/4-inch bolts would not fit. Therefore 1/2-inch common bolts were used. There were other obvious problems. The bottom chords were not properly extended. Many joists were off-center. Truss girders were also not adequately bolted together.
BBL planned to permanently remedy the connection deficiencies by welding the components together. As the erection progressed, Colonie Masonry ordered and directed the placement of bundles of steel roof decking onto the roof level. The bundles weighed almost two tons each. When the bundles of roof decking were lowered to rest on the bar joists on April 10, 1987, the steel structure was inherently unstable. The placement of the decking violated, as all parties concede, a basic construction principle forbidding the placement of external loads upon a steel frame until the structure is completely stabilized.
Plaintiffs Mahan, Wright and Lemire’s involvement thus began. Lemire was a trained volunteer firefighter with the Boght Fire Company which was based in the Town of Colonie and, among many other firefighters, participated directly in the rescue effort. Wright was a member of the Midway Fire Department, another department which also was based in the Town of Colonie. Wright, unlike Lemire, was not a trained firefighter but rather was the "Department Photographer”. He commenced taking photographs of the rescue effort. Mahan was a full-time police officer employed by the Town of Colonie Police Department and was handling crowd control.
*426 Dunham was freed after almost two hours of work and as he was being placed by firefighters into a bucket loader to be lowered to the ground, the twisted steel shifted and a second collapse occurred. This second collapse was captured on film by television news cameras on the scene. A videotape of this second collapse is included in the record before the court. Plaintiffs Wright, Lemire and Mahan were allegedly struck and injured by pieces of the falling steel and other debris. Their injuries were serious and all three were hospitalized.
At issue is whether the three injured rescuers may maintain causes of action based upon the Labor Law and if so, whether they are entitled to summary judgment. Specifically plaintiffs seek summary judgment under section 240 (1) of the Labor Law. The court notes that their causes of action are not limited to that section of the Labor Law and that sections 200 and 241 (6) may also be applicable. The reason why the plaintiffs are moving under section 240 (1) is obvious. The comparative negligence of the injured party is a defense to actions based upon sections 200 and 241 (6); it is not however a defense to actions under section 240 (1). (Rocovich v Consolidated Edison Co., 78 NY2d 509; Long v Forest-Fehlhaber, 55 NY2d 154.)
The opposition contends that Lemire, Wright and Mahan, notwithstanding their lawful involvement in the rescue effort, were not construction workers employed on the site and thus are not entitled to any of the protections afforded to workers by the Labor Law. The opponents contend that these three plaintiffs are limited to whatever common-law causes of action they may legally assert.
Labor Law § 240 provides in pertinent part:
"Scaffolding and other devices for use of employees
"1. All contractors and owners and their agents * * * in the erection * * * of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.”
Labor Law § 240 imposes a nondelegable duty upon contractors and owners and their agents to provide proper equipment and protection to construction workers (Zimmer v Chemung County Performing Arts, 65 NY2d 513). In order to prevail in a Labor Law § 240 action, a plaintiff must establish that the *427 statute was violated and that the violation was a proximate cause of the plaintiffs injuries (Amedure v Standard Furniture Co., 125 AD2d 170, appeal withdrawn 70 NY2d 708; Linney v Consistory of Belview Refm. Church, 115 AD2d 209). "[TJhis statute is one for the protection of workmen from injury and undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed” (Quigley v Thatcher, 207 NY 66, 68, quoted in Koenig v Patrick Constr. Corp., 298 NY 313, 319, and Zimmer v Che-mung County Performing Arts, supra, at 520-521). The statute has been interpreted "as imposing absolute liability for a breach which has proximately caused an injury” (Rocovich v Consolidated Edison Co., 78 NY2d 509, 513, supra).
Section 200 (1), which codifies the common-law standard of care, requires that "All places * * * shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places”. Section 241 (6) applies "to the persons employed therein or lawfully frequenting such places”.
The court has not itself found, nor have the parties cited, any precedent involving the application of a Labor Law safety statute to emergency rescue personnel who sustain injury while performing duties on a construction site.
The Court of Appeals has decided two cases which hold that the Labor Law provisions at issue in this case are restricted in application to workers employed in some capacity on a construction site. In Mordkofsky v V.C.V. Dev. Corp. (76 NY2d 573), the Court held that sections 200 and 241 of the Labor Law do not apply to a contract-vendee of a home being custom built who was injured when the deck of the home under construction gave way while he was inspecting the progress of work. The Court specifically held that plaintiff was not within the class of persons "employed therein or lawfully frequenting” the construction site. The Court emphasized that the primary purpose of the Labor Law was "the protection of workers” and that "[o]ur holdings reflect the clear legislative history of sections 200, 240 and 241 of the Labor Law, which demonstrates that the Legislature’s principal objective and purpose underlying these enactments was to provide for the health and safety of employees” (76 NY2d, at 577).
More recently in Gibson v Worthington Div. of McGrawEdison Co. (78 NY2d 1108, revg 168 AD2d 935, and 142 AD2d *428 991), the Court of Appeals rejected a Labor Law claim by an engineer who was injured when the roof he was standing upon gave way. The engineer was inspecting the roof to prepare a repair estimate. In Gibson (supra), the Court noted that the plaintiff was not a volunteer and that his employer was specifically invited by the owner to submit an estimate. The Court held that plaintiff was not within "the class of workers” that the Labor Law was enacted to protect. The Court found that plaintiff was relegated to recovery upon traditional negligence principles.
There are, however, precedents which recognize that recourse under Labor Law safety statutes may be available to persons injured on a construction site who were not actually working there (Kelly v Canino, 156 AD2d 948 [plaintiff who visited a construction site to seek religious counsel and comfort from his pastor, a contractor on the site, found to be "lawfully frequenting” site for purposes of Labor Law § 241 (6)]; DeFreece v Penny Bag, 137 AD2d 744 [plaintiff who while seeking a job fell through a hole in a roof was covered by Labor Law § 241 (6)]; Brennan v M.L.P. Bldrs. Corp., 262 NY 464 [section 241 was extended to steamfitters invited onto site for potential employment]). This line of cases was cited neither approvingly nor disprovingly by the Court of Appeals in Mordkofsky v V.C.V. Dev. Corp. (supra). The court notes that such line of cases was not expressly overruled by the Court in Mordkofsky.
It is beyond cavil that plaintiffs Lemire, Wright and Mahan were not on the construction site as construction workers or as employees of any contractor and thus precedent dictates that they possess no cause of action under Labor Law § 240 (1).
As stated by the Court of Appeals: "We have held that in order to invoke the protections afforded by the Labor Law and to come within the special class for whose benefit liability is imposed upon contractors, owners and their agents (see, Zimmer v Chemung County Performing Arts, 65 NY2d 513; Allen v Cloutier Constr. Corp., 44 NY2d 290; Koenig v Patrick Constr. Corp., 298 NY 313), a 'plaintiff must demonstrate that he was both permitted or suffered to work on a building or structure and that he was hired by someone, be it owner, contractor or their agent’ (Whelen v Warwick Val. Civic & Social Club, 47 NY2d 970, 971)” (76 NY2d, at 576-577).
The court finds as a matter of law that the plaintiffs *429 Lemire, Wright and Mahan do not fall within the class of persons covered by section 240 (1) of the Labor Law.
Accordingly the defendants’ motions are granted and such causes of action based upon Labor Law § 240 (1) are dismissed without costs. The motions of plaintiffs Lemire, Wright and Mahan seeking summary judgment based upon Labor Law § 240 (1) are denied without costs.
Labor Law §§ 200 and 241 (6) are not as restrictively worded as section 240 (1) and afford protection not only to employees but also to those "lawfully frequenting” a construction site. In this case, the site was under the specific over-all control of Walfred and BBL. The deposition testimony of the participants clearly demonstrates that all postcollapse efforts focused on getting medical help to plaintiffs Williams and Dunham and in freeing plaintiff Dunham from the wreckage. Since there is no evidence which even remotely hints that Walfred and BBL rejected the assistance of emergency personnel who converged on the site, it would require a very narrow and strained interpretation to reach the conclusion that plaintiffs Lemire, Wright and Mahan were not, under these unique and specific circumstances, "lawfully frequenting” the site. This court is not prepared to apply such a restrictive interpretation to sections 200 and 241 (6) of the Labor Law and bar these three plaintiffs from pursuing causes of action under those sections. The plaintiffs Lemire, Wright and Mahan are found to fall within the class protected by sections 200 and 241 (6) of the Labor Law. Thus, their complaints state causes of action which must be resolved at trial. The motions for summary judgment dismissing these causes of action are denied without costs.

 For purposes of this decision, the plaintiffs will each be referred to in the singular form by their last names only.