OPINION OF THE COURT
Andrew V. Siracuse, J.
This Labor Law § 240 (1) case presents a novel issue: is a fall during the attempted rescue of a fellow laborer facing a gravity-related danger within the scope of the Scaffold Law? For several reasons this court holds that it is, and the plaintiffs herein are entitled to partial summary judgment.
*691 Plaintiff Carmelo Rivera was working with Jeffrey Snow under the direction of Paul Briggs, painting a highway bridge over the New York State Barge Canal. On August 17, 1992, the crew was placing a tarp under the bridge to catch sand from sandblasting. Snow was on scaffolding attached to the bridge, Briggs was on a barge in the water, and Rivera, using a 10- or 12-foot A-frame stepladder, was on the shore, where he was to tie off the tarp lines.
Snow was standing on the scaffolding when a pick (a metal scaffold piece) came off; he grabbed for the pick and caught it, but lost his balance and ended up dangling from a cable. Plaintiff saw Snow "dangling”, "hanging” from a cable and realized Snow was in danger of falling. Snow conceded in his deposition that he had "yelled” for help out of fear of falling. Briggs saw Snow dangling from the cable and heard him "yelling” for help. Plaintiff testified that Briggs "yelled for me to help Jeff”; Briggs did not contradict that testimony, stating only that he was "not real sure if I told him [plaintiff] to help him [Snow] or not.”
In any event, plaintiff climbed down the ladder from the I-beam, folded the ladder, moved it about 75 feet closer to the area below where Snow was dangling, set up the ladder again and began to climb back up onto the beam to rescue Snow. He wore no safety device. When he was about 10 inches from the beam, both feet still on the ladder, he was thrown to the ground and injured when the ladder unexpectedly "kicked out”.
Snow was not injured; after releasing the pick from one hand, he was able to use both hands and work himself down the cable to a point where he dropped about two feet to the ground. Snow saw Rivera on the bank. He did not observe the ladder. Briggs saw Rivera lying on the bank, his ankle twisted, and saw the stepladder near him.
Rivera, who sustained wrist and ankle fractures, sued general contractor Sealand Contractors Corp. under Labor Law §§ 200, 240 (1) and § 241 (6).[1] He and his wife have now moved for summary judgment under the section 240 (1) claim. Defendant Sealand and third-party defendant Bruckel have both moved to dismiss the complaint in its entirety.
As plaintiffs’ attorney all but conceded at oral argument, the case stands or falls on section 240 (1). Sealand is not liable under section 200 because it had no direction or control of *692 Bruckel’s work, and plaintiffs have failed to cite specific provisions of the Industrial Code (12 NYCRR part 23) so as to support a cause of action under section 241 (6). These causes of action are therefore dismissed.
As to the section 240 (1) claim, defendants raise three major points in their responding papers. The third-party defendant argues that summary judgment is inappropriate because the accident was unwitnessed, and that the accident was not caused by a defective ladder but by an unforeseeable intervening act, the rescue attempt. Both defendants claim that the rescue attempt did not fall within the statute because it was not necessary and incidental to the construction work.
Although nobody saw Rivera’s fall, his consistent account of his accident is corroborated by the strongest of circumstantial evidence. Both Snow and Briggs saw him on the bank just after he fell. Briggs saw the ladder nearby, and observed Rivera’s ankle injury. There is no evidence that casts any doubt on plaintiff’s story (as there was in, e.g., Ampolini v Long Is. Light. Co., 186 AD2d 772) or which suggests any other possible cause of the accident, and the defendants have offered no theory of how the accident could have occurred otherwise. Neither the depositions of Brill or Snow nor the submissions in opposition to plaintiff’s motion contest plaintiff’s account of how the accident happened. Thus, there is no credibility issue to be determined, and plaintiff’s uncontroverted account may be accepted as factual (see, e.g., Halkias v Hamburg Cent. School Dist., 186 AD2d 1040; Marasco v Kaplan, 177 AD2d 933; Walsh v Baker, 172 AD2d 1038, 1039).
The fact that no one saw plaintiff fall from the ladder does not warrant denial of summary judgment to plaintiff (see, DeRocha v Old Spaghetti Warehouse, 207 AD2d 978, 979; Morris v Mark IV Constr. Co., 203 AD2d 922, 923; Marasco v Kaplan, supra). Employees of Bruckel immediately came to plaintiff’s assistance and had the opportunity to investigate the accident and to inspect the ladder (see, DeRocha v Old Spaghetti Warehouse, supra, 207 AD2d, at 979; Davis v Pizzagalli Constr. Co., 186 AD2d 960, 961; Marasco v Kaplan, supra). Hence, this is not an instance where the manner in which the accident occurred is within the exclusive knowledge of plaintiff (cf., Carlos v Rochester Gen. Hosp., 163 AD2d 894).
Plaintiff’s moving papers set forth through deposition testimony probative evidentiary facts establishing a prima facie violation by Sealand of the duty imposed by Labor Law § 240 (1), which was the proximate cause of the accident (see, *693 DeRocha v Old Spaghetti Warehouse, 207 AD2d 978, 979, supra; Neville v Deters, 175 AD2d 597; Bras v Atlas Constr. Corp., 166 AD2d 401). Where, as here, there is a showing of a ladder kicking out without any apparent cause, the burden shifts to defendant to submit evidentiary facts which raise a factual issue on liability (see, Neville v Deters, supra; see also, Gordon v Eastern Ry. Supply, 82 NY2d 555; Birbilis v Rapp, 205 AD2d 569; Spike v Holland’s Lbr. Co., 198 AD2d 891; Davis v Pizzagalli Constr. Co., 186 AD2d 960, 961, supra; Bras v Atlas Constr. Corp., supra). Defendant has not done so.
The "core” objective of section 240 (1) is protection of workers subject to elevation-related risks (see, Gordon v Eastern Ry. Supply, supra, 82 NY2d, at 559, 561). It is undisputed that plaintiff fell from an elevated worksite solely as the result of the ladder kicking out and, thus, "the 'core’ objective of section 240 (1) was not met” (Gordon v Eastern Ry. Supply, supra, 82 NY2d, at 561 [summary judgment to plaintiff where ladder tipped]; see also, Neville v Deters, supra [summary judgment to plaintiff where ladder "kicked out”]; Spike v Holland’s Lbr. Co., supra [summary judgment to plaintiff where scaffold "kicked out”]) since the kicking up or kicking out of a scaffold or ladder is essentially a form of collapse not unlike a rung dislodging from a ladder (see, Davis v Pizzagalli Constr. Co., supra, 186 AD2d, at 961 [summary judgment to plaintiff where part of scaffold "kicked up”]; Klien v General Foods Corp., 148 AD2d 968; Ferra v County of Wayne, 147 AD2d 964).
In other words, the kicking out of the ladder per se constituted a prima facie case under section 240 (1) for the manifest reason that such could not have occurred had the ladder been properly constructed to protect against the elevation risk involved in using it to reach a beam (see, Birbilis v Rapp, supra, 205 AD2d, at 570; Perry v National Structures, 192 AD2d 1136; see also, Bras v Atlas Constr. Corp., supra).
Third-party defendant’s argument that the rescue attempt was an unforeseeable superseding cause of the accident is inappropriate in the context of the Scaffold Law’s absolute statutory liability. A brief review of the differences between negligence and Scaffold Law liability will show why this is so.
A negligence defendant’s duty runs to all foreseeable plaintiffs and is bounded by the foreseeability of injury. If a particular accident cannot be foreseen it cannot be prevented; and it would obviously be unreasonable to grant recovery against a defendant who could have done nothing to prevent the accident.
*694 For that reason an unforeseeable superseding event is said to "cut off” liability. It would be more accurate to say that the proximate cause of the negligence plaintiff’s injuries lay in an unforeseeable chain of events, and defendants have no duty to guard against events they cannot reasonably foresee.
Duty under the Scaffold Law is quite different. It runs to employees only and is absolute, unbounded by any considerations of foreseeability or reasonable precaution. The Court of Appeals and the Appellate Division have repeatedly held that liability will be found even when no safety devices exist that could have prevented the injury. According to this interpretation, in enacting the Scaffold Law the Legislature chose to place the risk of elevation-related injuries on the owner and contractor rather than on the employee.
Concepts such as foreseeability and superseding cause are alien to the liability imposed by the Scaffold Law. Instead of foreseeability there is absolute liability. Instead of superseding cause there is the statute’s judicial limitation to acts necessary and incidental to the construction work.
This is not to eliminate proximate cause; the plaintiff must still show that his injuries resulted from an elevation-related risk. As noted above, however, the accident which allegedly gave rise to the plaintiff’s injuries is precisely the type of accident which has uniformly been held to fall within the scope of section 240 (1).
Thus, whatever of merit there may be in the defendant’s foreseeability argument is encompassed by a third question: is the rescue of a fellow worker within the scope of section 240 (1)? If rescue work falls within the statute plaintiffs may recover, whether the attempt was reasonably foreseeable or not.
It should first be noted that Dunham v Walfred Assocs. (155 Misc 2d 422), relied upon by Sealand, is of no relevance. Dunham held that firefighters and rescue teams summoned to the scene of a construction accident were not entitled to the protection of section 240. The court quite properly based its decision on statutory language: section 240 is limited to employees, and though the rescue workers were lawfully on the site, they were not employees within the meaning of the section[2] (see generally, Gibson v Worthington Div. of McGraw-Edison Co., 78 NY2d 1108, 1109; Mordkofsky v V.C.V. Dev. Corp., 76 NY2d 573, 576-577). Dunham does not hold, as urged by defen *695 dant, that a rescue attempt by a worker indisputably within the class of protected persons is not a protected activity.
Sealand also suggests that Snow was in no real danger, and that his concern was more for the pick than for his own safety. This is a red herring. It was reasonable for Rivera and Briggs to assume Snow was in danger, and to respond at once without seeking a clarification of his cries for help.
Plaintiff has argued that the danger to Snow, as well as the danger to himself, was elevation related, and that the entire chain of events began with a violation of the statute (Snow was not tied off and the scaffolding was defective) and continued with another (the ladder’s kicking out under Rivera). This is an appealing argument, but the court must first address the necessary and incidental nature of the rescue itself.
Contrary to defendant’s contentions, the reasonable but liberal interpretation of section 240 (1) is required to effectuate its core objective (see, Gordon v Eastern Ry. Supply, supra, 82 NY2d, at 555, 559; Zimmer v Chemung County Performing Arts, 65 NY2d 513, 520-521; Koenig v Patrick Constr. Co., 298 NY 313, 319). In keeping with this mandate workers are protected when engaged in tasks "necessary and incidental” to construction, and the Appellate Division has interpreted this phrase quite broadly. The Fourth Department has held that obtaining materials (Hagins v State of New York, 159 AD2d 941) and walking between the parking lot and the worksite (Allen v City of Buffalo, 161 AD2d 1134) are both acts necessary and incidental to the construction work. The Second Department has held that retrieving fallen tools and talking with coworkers are also within the statute (Birbilis v Rapp, 205 AD2d 569, supra).
If retrieving fallen tools is an act within the statute, retrieving a fallen worker should a fortiori come within it as well. The intent of the Legislature was to provide a measure of protection and compensation for those whose work puts them in danger of falling. That danger is no less real, and no less to be protected against, when it arises from another employee’s jeopardy.
Construction work by its very nature is "dangerous” (see, Rocha v State of New York, 45 AD2d 633, 635). Manifestly, then, the salutary "[d]anger invites rescue” precept (see, e.g., Wagner v International Ry. Co., 232 NY 176, 180) has special significance in the construction field because of the close-knit relationship among workers (akin to that among firemen, policemen, etc.) and the interdependence required of the work *696 ers for their mutual safety. There is often no time for outside help; workers have no choice but to aid their fellows.
In other words, the attempted rescue must for purposes of section 240 (1) be deemed an integral component of plaintiff’s work and therefore a protected activity under the statute (see, Orr v Christa Constr., 206 AD2d 881; Mosher v St. Joseph’s Villa, 184 AD2d 1000, 1002). But even if the rescue attempt were only deemed incidental to plaintiffs explicitly assigned tasks, settled law establishes that such incidental activity falls within the ambit of section 240 (1) (see, e.g., Hagins v State of New York, 81 NY2d 921, 923, supra [judgment for claimant who fell from abutment despite "the fact that the abutment itself may not have been the focus of claimant’s work at the time”]; Birbilis v Rapp, supra, 205 AD2d, at 570 [judgment for plaintiff although "not necessary * * * to be on the sidewalk bridge (erected to catch falling tools) * * * in order to speak to his co-worker”]; Reeves v Red Wing Co., 139 AD2d 935, 936 [plaintiff injured by collapse of a platform onto which he had stepped solely to do other than his designated work granted summary judgment since it was not necessary that he "be actually working on his assigned duties at the time of the injury”]; Reinhart v Long Is. Light. Co., 91 AD2d 571 [plumbers injured when guardrail gave way after meeting on scaffold to discuss payroll problem granted summary judgment]).
While recent cases, such as Rennoldsen v Volpe Realty (216 AD2d 912), cited by Bruckel, suggest a retreat from the breadth of Scaffold Law liability, this present case is not a strong one for imposing further limits. If the tarp had become entangled and Rivera had been asked to climb the ladder and set it free, and had fallen at that point, he would clearly be entitled to succeed under section 240 (1). His remedy should not be cut off because he sought to rescue a human being rather than an object.
Defendants claim that rescuers should be limited to negligence actions alone, because otherwise employers will instruct their employees to avoid rescuing fellow workers. This is an appallingly callous argument, although the court expects that construction workers would in any case let their humanity triumph over pecuniary calculation. It would effectively leave injured rescuers with no recourse beyond workers’ compensation, for without the Labor Law there would be no cause of action against the owner and general contractor.
Defendant Sealand also argues that it should not be liable because it would be unreasonable to expect a rescuer to use *697 safety devices when time is so much of the essence. This may well be a practical view, but the statute applies whether safety devices are reasonable or unreasonable and even when safety devices do not exist. Once the work is within the statute and the risk an elevation-related one, liability is all but automatic regardless of the practicability of safety devices. Furthermore, this argument would essentially place the burden of the situation’s exigency on the worker — a contradiction of the "danger invites rescue” doctrine. Moreover, as the Legislature has acted to encourage voluntary rescue attempts by relieving rescuers of certain tort liability the position may also be in violation of public policy.
The court holds that the emergency rescue of a worker in danger is necessary and incidental to the construction project. As Rivera was injured by a fall within the statute, he is entitled to partial summary judgment. To rule otherwise would not only go in the face of precedent, it would discourage the natural and precious fellow feeling that leads to acts of mutual aid and even heroism.

. Because the canal and bridge are owned by the State of New York, plaintiffs have sued the State in the Court of Claims.

. The rescue workers in this case were presumably covered by their own insurance and receive other statutory protection.