[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 190 
Phillip Carl Dillard and his wife, Kathy Lynn Dillard, sued Gadsden Fire Extinguisher CO2 Service, Inc. ("Gadsden Fire"), and Pittway Corporation, claiming that a smoke detector manufactured by Pittway and sold by Gadsden Fire had failed to work properly during a fire. Phillip's claims were based on personal injuries, and his wife's claims were based on loss of consortium. The trial court entered a summary judgment in favor of the defendants. The Dillards appeal.
A summary judgment is proper when there is "no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c), Ala.R.Civ.P. The movant has the burden of showing that this standard is met. If the movant has made a prima facie showing that no genuine issue of material fact exists, then the burden shifts to the nonmovant to present evidence creating a genuine issue of material fact.Foremost Ins. Co. v. Indies House, Inc., 602 So.2d 380
(Ala. 1992). To do this, the nonmovant must produce "substantial evidence" in support of his or her claim or defense. § 12-21-12, Ala. Code 1975. "Substantial evidence" is defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
Viewed in the light most favorable to the nonmovant, as we must view it, the evidence suggests the following facts: Phillip Dillard's sister, Kathy Richey, operated a boarding home for the elderly in Etowah County. In 1989, she contacted Gadsden Fire about purchasing smoke detectors. She told its employee Calvin Boggs that she wanted the "best" smoke detectors because she was operating a boarding home. Boggs testified that he knew that the smoke detectors were to be used in a boarding home.
Gadsden Fire did not usually keep smoke detectors in stock. It was Gadsden Fire's custom that when a customer asked for a smoke detector, a Gadsden Fire employee would purchase a smoke detector from a hardware store, add on a $4 or $5 charge for the service of choosing a smoke detector, and then sell it to the customer. Boggs purchased Pittway model 83R ionization smoke detectors for Richey. The smoke detectors were installed in the home, and new batteries were placed in the detectors approximately two weeks before the fire occurred. *Page 191 
On the morning of April 27, 1991, Richey was asleep in the living room of the home. Barbara Lemons, a sister of Kathy Richey and Phillip Dillard, came to the home around 7:00 a.m. to wash and dry clothes. She put some clothes in the washer and made coffee. She then went into the living room, where she saw smoke and fire coming out of a closet. Her screams awakened Richey. Richey opened the closet and threw the burning clothes outside the front door. One of the smoke detectors was near the closet, but the alarm had not sounded. It was not until after Richey was trying to wake the others in the home that the alarm sounded.
Phillip Dillard, who lived approximately one block from the home, ran to help. He rescued one of the boarders. He then attempted to save his father, who was a boarder in the home. A portion of the roof fell in, injuring Dillard and killing his father. Another boarder, Mary Brock, was also killed in the fire.
The administratrix of the estate of Mary Brock filed a wrongful death action against Kathy Richey, Gadsden Fire, and Pittway. In a separate action, Kathy Richey and Phillip Dillard sued Gadsden Fire and Pittway, based on the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), for damages based on personal injuries they had received in the fire. In that second action, Phillip Dillard's wife Kathy Lynn Dillard also sued for damages, claiming a loss of consortium; and Phillip Dillard, as executor of his father's estate, also filed a wrongful death claim against Gadsden Fire and Pittway.
The trial court consolidated the actions and entered a summary judgment for Gadsden Fire and Pittway on Phillip's claims alleging personal injuries and on his wife's derivative claim alleging loss of consortium. The trial court denied Pittway and Gadsden Fire's summary judgment motions as to the other plaintiffs. The court made Gadsden Fire and Pittway's summary judgment final, pursuant to Rule 54(b), Ala.R.Civ.P. Phillip Dillard and his wife Kathy Lynn Dillard appeal.
When Pittway and Gadsden Fire filed their summary judgment motions, discovery was not yet completed. Pittway and Gadsden Fire conceded the existence of a question of fact as to whether there had been a defect in the smoke detector. (R.T. 16, 37-38; C.R. 336; Pittway's brief, p. 15.)
Suffice it to say, the plaintiffs presented expert evidence indicating that the smoke detectors chosen by Gadsden Fire were not the "best" type of smoke detector available. They presented evidence indicating that Pittway model 83R smoke detectors had malfunctioned, that they had been the subject of numerous consumer complaints, and that a component contained within them was the subject of a recall when it was used in another model. Specifically, the same horn used in the alarm of the model 83R smoke detectors was the subject of a recall (because corrosion had caused the horn not to work) when it was used as a component of other models. The plaintiffs also presented evidence that model 83R smoke detectors were set at a 20% obscuration level (zero is clean air and 100% is totally smoke-filled and impossible to see through). According to documents obtained during discovery, the model 83R smoke detector should have had a 7% obscuration level.
 Gadsden Fire
Gadsden Fire argues that it is not in the business of selling smoke detectors, as that concept is employed in the AEMLD. It also argues that there was no causal relation between its handling of the smoke detector and the defect, because it merely resold the smoke detector in the same condition it was in when Gadsden Fire received it from Pittway. We disagree with both arguments.
Gadsden Fire is in the business of providing fire safety products. It knew that Kathy Richey wanted the "best" smoke detectors, and, in particular, Gadsden Fire knew that the smoke detectors were going to be installed in a home where elderly people were living and that those people would need the earliest possible warning of a fire. Boggs said he went to a store and purchased a smoke detector that he perceived as being a "good brand" that should let someone know immediately if there was a fire. Boggs stated in his deposition that his "general practice" was to charge $4 or $5 for the "service" *Page 192 
of choosing a smoke detector. Additionally, there was evidence that Gadsden Fire did occasionally have smoke detectors in stock.
Gadsden Fire is not entitled to a judgment based on a "no-causal-relation" defense. If the seller of a product has an opportunity to inspect the product that is superior to the opportunity of the consumer, or has knowledge of the product that is superior to that of the consumer, then it is not entitled to a "no-causal-relation" defense, even where it did not contribute to the defective condition of the product.Caudle v. Patridge, 566 So.2d 244 (Ala. 1990). InCaudle, the seller of a four-wheel-drive "conversion kit" to be installed on a truck was not entitled to a no-causal-relation defense, because he had, at the very least, a superior knowledge of the nature of the trucks on which such kits had been installed. Gadsden Fire was in the business of selling fire safety products. It undertook to choose a smoke detector for Richey. Boggs opened the smoke detector and explained to Richey how it was to be used and where it should be placed.
We conclude that the trial court erred in entering the summary judgment in favor of Gadsden Fire as to the personal claims of Phillip Dillard and his wife Kathy Lynn Dillard.
 Pittway
Pittway argues that Phillip and Kathy Lynn Dillard's injuries were not proximately caused by a defect in the smoke detectors. The purpose of a smoke detector is to provide notice of a fire. Pittway contends that Phillip had notice of the fire when he ran inside the home to help. Therefore, it argues that Phillip's personal injuries did not result from a lack of notice of the fire. In essence, Pittway is arguing that Phillip assumed the risk or was contributorily negligent by attempting the rescue. Pittway argues that Phillip was not the ultimate user or consumer of the smoke detector and that it therefore owed no duty to him; Pittway says the ultimate users or consumers were the occupants of the home. Pittway also argues that it owed no duty to Phillip under the "rescue doctrine." Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new and independent causes, produces an injury or harm and without which the injury or harm would not occur.Thetford v. City of Clanton, 605 So.2d 835 (Ala. 1992). Foreseeability is the cornerstone of proximate cause.General Motors Corp. v. Edwards, 482 So.2d 1176
(Ala. 1985). The first question we must answer is whether it is reasonably foreseeable that a smoke detector's failure to timely sound would result in injuries.
 "`An essential element of the plaintiff's cause of action for negligence, or for that matter for any other tort, is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered. This connection usually is dealt with by the courts in terms of what is called "proximate cause."'"
Wassman v. Mobile County Commun. Dist., 665 So.2d 941,945 (Ala. 1995), quoting Prosser and Keeton on the Law ofTorts § 41, p. 263 (5th ed. 1984).
As Pittway notes, a smoke detector is a safety device and its purpose is to give early notice of fire. Certainly, it is foreseeable that a person could be hurt if a smoke detector fails to give notice for all to exit the house or if the warning is delayed because of a defect in the detector. "It would be wholly inconsistent to allow the manufacturer of a safety device . . . to design a defective product and then allow that manufacturer to escape liability when the product is used for an intended use. . . ." Dennis v. American Honda MotorCo., 585 So.2d 1336, 1340 (Ala. 1991). In a similar case involving heat detectors, we held:
 "[A] jury could reasonably conclude that had the heat detector worked as it was intended, and provided an early warning of danger, [the plaintiff's son] could have escaped from the house. In other words, the jury was entitled to find that the natural and probable sequence of events which led to [the death of the plaintiff's son] was proximately caused by the defective condition of the . . . heat detector." *Page 193 
Interstate Engineering, Inc. v. Burnette,474 So.2d 624, 628 (Ala. 1985).
A "delay" in an emergency situation can give rise to proximate cause. In Wassman, supra, we held that the defendant's 39-minute delay in returning a "911" emergency telephone call was the proximate cause of the victim's death. The victim was a ventilator-dependent quadriplegic child. His mother was changing his ventilator tube when she had trouble inserting the tube. She dialed 911 but received no answer. She then telephoned an ambulance service located near her home. The service's ambulance had mechanical problems, so the service sent an ambulance from another location; the ambulance did not arrive for 30 minutes. By the time it arrived, the victim's tissues were so swollen that a tube could not be inserted. Shortly after the ambulance arrived, the defendant returned the 911 call. The victim died because of a lack of oxygen.
In this present case, we conclude that it is foreseeable that a person could be injured by the delay of a smoke detector's warning.
Pittway next argues that Phillip Dillard was not the ultimate user or consumer of the smoke detector, because he was not living in the home. We note that the ultimate user or consumer who seeks recovery in an AEMLD action need not have purchased the product, but could be a family member, friend, employee, guest, or donee of the purchaser. Atkins v. American MotorsCorp., 335 So.2d 134 (Ala. 1976).
The next question is whether a rescuer can sue under the AEMLD. The Dillards argue that they are entitled to recover for their personal injuries under the rescue doctrine in a product liability case. Pittway correctly asserts that one who is aware of danger and fails to exercise ordinary care to avoid injury cannot recover from the person whose negligence was responsible for the peril. However, under the "danger invites rescue" doctrine, one who attempts to rescue another who has been placed in peril by the defendant stands, for purposes of determining causation, in the position of the person being rescued. 57A Am.Jur. Negligence § 689 (1990).
The rescue doctrine arose as a way to establish causal relation between the action of the defendant and the harm to a rescuer and to prohibit the negligent defendant from using the affirmative defenses of assumption of the risk and contributory negligence against the rescuer. Govich v. North AmericanSystems, Inc., 112 N.M. 226, 814 P.2d 94 (1991). The rescue doctrine extends, for the benefit of the rescuer, the liability the defendant may have toward the person he placed in peril. Essentially, the rescue doctrine provides that it is always foreseeable that someone may attempt to rescue a person who has been placed in a dangerous position and that the rescuer may incur injuries in doing so. Thus, if the defendant has acted negligently toward the person being rescued, he has acted negligently toward the rescuer.
Alabama has adopted the rescue doctrine as a bar to the affirmative defenses of contributory negligence and assumption of the risk. "Neither contributory negligence nor assumption of risk is charged to him who comes to the rescue of others in peril without their fault, unless the act of the rescuer is manifestly rash and reckless to a man of ordinary prudence acting in emergency." Seaboard Air Line Ry. v. Johnson,217 Ala. 251, 254, 115 So. 168, 170 (1927); cert. dismissed,278 U.S. 576, 49 S.Ct. 95, 73 L.Ed. 515 (1928). AtlanticCoast Line R.R. v. Jeffcoat, 214 Ala. 317, 107 So. 456, cert. denied, 271 U.S. 688, 46 S.Ct. 639, 70 L.Ed. 1152 (1926). In other words, unless the rescuer's own conduct in attempting the rescue is wanton, then the rescuer may recover from the negligent defendant. In Seaboard Air Line Ry., the plaintiff was injured when he attempted to stop a train car from striking his fellow employees. This Court held that the defendant could not defend on the doctrine of contributory negligence or assumption of the risk.
Other jurisdictions have allowed the rescuer to sue the defendant under a product liability theory if the defendant's product had put the person being rescued in danger. SeeMcCoy v. American Suzuki Motor Corp.,86 Wash.App. 107, 936 P.2d 31, review granted, *Page 194 133 Wash.2d 1027, 950 P.2d 478 (1997) (motorist on highway who was struck by hit-and-run driver when he stopped to aid passengers in overturned car could sue manufacturer of the overturned car under the rescue doctrine); Williams v.Foster, 281 Ill.App.3d 203, 217 Ill.Dec. 9, 666 N.E.2d 678, appeal denied, 168 Ill.2d 628, 219 Ill.Dec. 578, 671 N.E.2d 745
(1996) (rescuer sued manufacturer of water heater based on injuries suffered while rescuing family from burning home);Welch v. Hesston Corp., 540 S.W.2d 127 (Mo.Ct.App. 1976) (injured volunteer fireman sued manufacturer of haystacker machine); Govich v. North American Systems, Inc.,112 N.M. 226, 814 P.2d 94 (1991) (plaintiff sued manufacturer of coffee maker and component based on harm suffered while attempting rescue of a dog from a burning house); Guarino v.Mine Safety Appliance Co., 25 N.Y.2d 460, 255 N.E.2d 173,306 N.Y.S.2d 942 (1969) (estate of rescuer who died of gas asphyxiation sued manufacturer of gas mask; court held that manufacturer committed culpable act by making and distributing defective oxygen-producing mask); Conaway v. Roberts,725 S.W.2d 377 (Tex.Ct.App. 1987) (rescuer sued manufacturer based on injuries suffered when he came to the aid of a neighbor trapped under a riding lawnmower).
The archetype rescue case is Wagner v. InternationalRy., 232 N.Y. 176, 133 N.E. 437 (1921). In that case, the rescuer was seriously injured in an attempt to rescue his cousin from a moving tram; the tram was moving as a result of the railway company's negligence. The rescuer lost at trial, and an intermediate appellate court directed a judgment on the verdict for the railway company. The New York Court of Appeals reversed, rejecting the railway's primary arguments that the rescuer's attempt was outside the chain of causation and that the rescuer was contributorily negligent. Judge Benjamin Cardozo stated:
 "Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperilled victim; it is a wrong also to his rescuer. . . . The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had."
232 N.Y. at 180, 133 N.E. at 437-38.
Rather than penalize the commendable human urge to rescue another in peril, we reaffirm the rescue doctrine. Therefore, we conclude that the trial court erred in entering the summary judgment in favor of Pittway as to the claims of Phillip Dillard and his wife Kathy Lynn Dillard.
REVERSED AND REMANDED.
HOOPER, C.J., and ALMON, SHORES, COOK, and LYONS,* JJ., concur.
MADDOX and SEE, JJ., dissent.
* Although Justice Lyons was not a member of this Court when this case was orally argued, he has listened to the tape of the oral argument.