Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us.  Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
November 14, 2023

2023 CO 56

**No. 21SC895, *Garcia v. Colo. Cab*—Torts—Negligence—Proximate Cause—Rescue Doctrine—Foreseeability—Issues of Law or Fact in General.**

In this negligence case, the supreme court addresses how to analyze proximate cause under the rescue doctrine.  Adhering to Colorado's long-standing foreseeability approach, the court holds that, to prove proximate cause, a rescuer must show that his injuries were reasonably foreseeable based on the defendant's alleged tortious conduct and the nature of the rescue attempt.  A rescuer's injuries are reasonably foreseeable if they naturally flow from the circumstances created by the defendant's tortious conduct or the rescue attempt.  This doesn't mean that precisely how the injuries occurred had to be foreseeable, only that the harm was within the scope of risk that was reasonably foreseeable.

The court then concludes that, based on the facts of this case, a reasonable jury could—and did—find that the rescuer's injuries were proximately caused by defendant's negligence.  The division therefore erred by reversing, as a matter of

law, the jury's verdict.  Accordingly, the supreme court now reverses the judgment

of the court of appeals and reinstates the jury's verdict.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

### 2023 CO 56

---

### Supreme Court Case No. 21SC895
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA1381

---

### Petitioner:

Jose Garcia,

v.

### Respondent:

Colorado Cab Company, LLC, a Colorado limited liability company d/b/a Denver Yellow Cab.

---

### Judgment Reversed
*en banc*
November 14, 2023

---

**Attorneys for Petitioner:**
Foster, Graham, Milstein & Calisher, LLP
Chip G. Schoneberger
Daniel S. Foster
　　*Denver, Colorado*

**Attorneys for Respondent:**
White and Steele, PC
John Lebsack
Keith R. Olivera
E. Catlynne Shadakofsky
　　*Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT**, **JUSTICE MÁRQUEZ**, **JUSTICE GABRIEL**, **JUSTICE HART**, **JUSTICE SAMOUR**, and **JUSTICE BERKENKOTTER** joined.

JUSTICE HOOD delivered the Opinion of the Court.

¶1 Jose Garcia sued Colorado Cab Company, LLC ("Colorado Cab") to recover for severe injuries he suffered while attempting to aid one of Colorado Cab's drivers, Ali Yusuf. Garcia discovered Yusuf being assaulted by Yusuf's passenger, Curt Glinton. Enraged by Garcia's interference, Glinton attacked Garcia, first with his fists and then with the cab itself. The jury determined that Colorado Cab was liable for failing to install certain protective devices and awarded Garcia damages.

¶2 In a split decision, a division of the court of appeals concluded, as a matter of law, that Garcia's injuries resulting from Glinton's theft and use of the cab as a weapon were "outside the risks reasonably to be anticipated" from both Colorado Cab's negligence and Garcia's rescue attempt; that is, Glinton's theft of the cab and subsequent use of it as a weapon were superseding causes that broke the causal chain between Colorado Cab's negligence and Garcia's injuries. *Garcia v. Colo. Cab Co.*, 2021 COA 129, ¶ 47, 503 P.3d 867, 877 ("*Garcia III*"). It is the division majority's superseding-cause ruling that Garcia challenges now.

¶3 The broader question presented to this court, however, is how to analyze proximate cause in the rescuer context. We hold that, to prove proximate cause, the rescuer must show that his injuries were reasonably foreseeable based on the defendant's alleged tortious conduct and the nature of the rescue attempt. While we agree with much of the division majority's analytical framework, we conclude

3

that it erred by deciding the issue of proximate cause as a matter of law. Therefore, we reverse the judgment of the court of appeals and reinstate the jury's verdict.

## I. Facts and Procedural History

### A. Initial Altercation

¶4 Near midnight on St. Patrick's Day in 2014, Yusuf picked up two men in northwest Denver. Both men were visibly intoxicated. Once in the cab, they refused to provide Yusuf with a destination, instead telling him when and where to turn as he drove. Glinton, one of the passengers, finally told Yusuf to pull over but then began to argue over the $6.50 fare. The argument escalated, and Glinton grabbed Yusuf from behind and began to punch him repeatedly.

¶5 Meanwhile, Garcia had called a cab and was waiting for it to arrive. He watched Yusuf's cab pass by and, believing the cab was for him, followed it down the road. After walking a few blocks, Garcia heard Yusuf cry for help. As he neared the cab, Garcia saw Glinton attacking Yusuf from the back seat.

¶6 Garcia approached the driver's side of the cab and told Glinton to stop. Glinton told Garcia to mind his own business, but Garcia refused to leave. Eventually, both Yusuf and Glinton exited the cab.

¶7 Glinton then assaulted Garcia before getting into the driver's seat of the cab. As he drove away, Glinton hit Garcia's knee with the vehicle. After briefly driving down the street with the stolen cab, Glinton turned around and accelerated toward

4

Yusuf and Garcia, who were standing in the middle of the street. The two dodged the vehicle as Glinton sped by. Glinton then spun the cab around a second time and again quickly accelerated. While Yusuf sought refuge behind a light pole, Garcia remained exposed in the middle of the street, and Glinton ran over him with the cab. Glinton then continued driving, dragging Garcia into a nearby parking lot. He finally stopped, shifted the cab into reverse, and hit Garcia again before driving off. The entire ordeal lasted around seven minutes, and only four minutes elapsed between Garcia approaching the cab and Glinton assaulting him with it.

¶8 Garcia suffered extensive injuries, including shattered ear drums, a traumatic brain injury, a fractured eye socket, three broken ribs, numerous torn ligaments, and other injuries that continue to cause hip and back pain.

## B. Trial and Appeals

¶9 Garcia sued Colorado Cab for negligence and unjust enrichment. Under Garcia's theory of the case, Colorado Cab breached its duty of care to Yusuf by failing to install a partition between the front and back seats of the cab and by failing to install interior cameras. Garcia further argued that he qualified as a rescuer and, under the rescue doctrine, Colorado Cab owed him a duty of care, which it also breached.

5

¶10     At the close of Garcia's presentation of evidence, Colorado Cab moved for a directed verdict. The trial court denied the motion, concluding that Colorado Cab owed Garcia a duty of care under the rescue doctrine. The jury awarded Garcia $1,605,000 in damages, attributing 45% fault to Colorado Cab and 55% fault to Glinton. Colorado Cab then moved for a judgment notwithstanding the verdict, which the trial court also denied.

¶11     Colorado Cab appealed, raising issues of duty, causation, and setoff. Garcia cross-appealed. The division addressed only the issue of duty, holding that Colorado Cab owed Garcia no duty of care. *Garcia v. Colo. Cab Co.*, 2019 COA 3, ¶ 1, 490 P.3d 415, 416 ("*Garcia I*"), *rev'd*, 2020 CO 55, 467 P.3d 302 ("*Garcia II*"). Garcia petitioned for certiorari review, which we granted to address the rescue doctrine. We held that Garcia qualified as a rescuer and that Colorado Cab's duty to Yusuf extended to Garcia. *Garcia II*, ¶ 29, 467 P.3d at 307. We then reversed and remanded so the division could address Colorado Cab's remaining contentions. *Id.* at ¶ 34, 467 P.3d at 307.

¶12     On remand, the division addressed proximate cause. *Garcia III*, ¶¶ 38–41, 503 P.3d at 875–76. It noted that although an intervening cause may break the causal chain in some situations, *id.* at ¶ 40, 503 P.3d at 876, even intentionally tortious or criminal acts won't if the act was foreseeable and "the harm at issue was within the scope of the risks reasonably to be foreseen from the defendant's

6

conduct or the rescuer's efforts," *id.* at ¶ 41, 503 P.3d at 876.  The majority emphasized that, in rescuer scenarios, the Third Restatement of Torts requires consideration of "whether, at the outset of that particular rescue, the risk of such harm would reasonably be anticipated."  *Id.* at ¶ 39, 503 P.3d at 876 (quoting Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 32 cmt. c (Am. L. Inst. 2010)).

¶13    The majority then divided the seven-minute incident into three distinct criminal acts: (1) Glinton's initial assault of Yusuf in the cab, (2) his theft of the cab, and (3) his use of the cab as a weapon.  *Id.* at ¶ 43, 503 P.3d at 876.

¶14    The division first concluded that Glinton's initial assault against Yusuf was foreseeable.  *Id.* at ¶ 44, 503 P.3d at 876.  And, under the rescue doctrine, Garcia's attempt to rescue Yusuf was also reasonably foreseeable.  *Id.* at ¶ 45, 503 P.3d at 876–77.  So, Colorado Cab was liable for the injuries Garcia sustained when Glinton assaulted him outside the cab.

¶15    The majority next concluded, however, that Garcia's injuries resulting from Glinton's theft and use of the cab as a weapon were neither "within the scope of the risk" that made Colorado Cab's failure to install safety features in the cab tortious nor the type of risk of harm "reasonably to be expected to arise in the course of a rescue of a cab driver being assaulted by a passenger."  *Id.* at ¶ 46, 503 P.3d at 877.  Thus, the majority determined, as a matter of law, that Glinton's

theft of the cab and subsequent use of the cab as a weapon were superseding causes that absolved Colorado Cab of liability for Garcia's injuries related to that conduct. *Id.* at ¶ 47, 503 P.3d at 877.

¶16 Justice Martinez dissented.[1] He criticized the majority for substituting its own judgment for the jury's, asserting that "a reasonable jury could—and did—find Colorado Cab liable for the injuries Garcia sustained when Glinton ran him over with the stolen cab." *Id.* at ¶ 58, 503 P.3d at 880 (Martinez, J., concurring in part and dissenting in part); *see also id.* at ¶ 70, 503 P.3d at 881–82. Justice Martinez also disapproved of the majority's reliance on the Third Restatement's section 32 because, in his view, the section departs from this court's more traditional proximate-cause analysis by considering whether the *extent* of harm, rather than the *risk* of harm, was foreseeable at the onset of a rescue. *Id.* at ¶ 81, 503 P.3d at 883.

¶17 We granted Garcia's petition to review the division's opinion.[2]

---

[1] Justice Martinez is a retired Colorado Supreme Court justice, who sat on the division in a senior status by assignment of the Chief Justice under provisions of Colo. Const. art. VI, section 5(3), and section 24-51-1105, C.R.S. (2023). By custom of the Colorado appellate courts, we use his former title here.

[2] We granted certiorari to review the following issue:

> [REFRAMED] Whether the division improperly narrows causation in rescuer scenarios by creating a dual-foreseeability test and applying it to each post-onset "volitional act" during the assaultive episode to overturn the jury's causation determination

## II. Discussion

### A. Standard of Review

¶18 We review de novo the division's conclusion that Glinton's commandeering of the cab constituted a superseding cause. *See Dep't of Corr., Denver Reception & Diagnostic Ctr. v. Stiles*, 2020 CO 90M, ¶ 31, 477 P.3d 709, 716; *A.R. v. D.R.*, 2020 CO 10, ¶ 37, 456 P.3d 1266, 1276. In conducting this review, we consider the division's obligation to review de novo a trial court's denial of a motion for a directed verdict or for a judgment notwithstanding the verdict. *Vaccaro v. Am. Fam. Ins. Grp.*, 2012 COA 9M, ¶ 40, 275 P.3d 750, 759; *Parks v. Edward Dale Parrish LLC*, 2019 COA 19, ¶ 9, 452 P.3d 141, 144. Such motions should be granted only where "there is no evidence that could support a verdict against the moving party on the claim." *Parks*, ¶ 10, 452 P.3d at 144. In reviewing the trial court's denial, appellate courts must "view the evidence, and all inferences that may reasonably be drawn therefrom, in the light most favorable to the nonmoving party." *Id.*

¶19 Here, determining whether the trial court erred by denying Colorado Cab's motions requires us to review both the jury's and the division's proximate-cause determinations. Proximate cause is usually an issue for the jury to decide, and "appellate courts are bound by the jury's findings when there is competent

---

and hold that using the taxi in the assault was a superseding cause of the taxi-related injuries as a matter of law.

evidence in the record supporting those findings." *City of Aurora v. Loveless*, 639 P.2d 1061, 1063 (Colo. 1981); *Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 2020 CO 51, ¶ 30, 467 P.3d 287, 292–93. "[O]nly in the clearest of cases, where reasonable minds can draw but one inference from the evidence, does the question become one of law to be determined by the court." *Lyons v. Nasby*, 770 P.2d 1250, 1256 (Colo. 1989), *superseded by statute on other grounds as recognized in Build It and They Will Drink, Inc. v. Strauch*, 253 P.3d 302, 305–06 (Colo. 2011).

## B. Causation

¶20 To succeed on a negligence claim, a plaintiff must prove that the defendant's breach of its duty of care *caused* the claimed injury. *See Loveless*, 639 P.2d at 1063. Causation requires a showing of both "cause in fact" and "proximate cause." *Rocky Mountain Planned Parenthood*, ¶ 27, 467 P.3d at 292. Cause in fact considers "whether, but for the alleged negligence, the harm would not have occurred." *Id.* at ¶ 28, 467 P.3d at 292 (quoting *N. Colo. Med. Ctr. v. Comm. on Anticompetitive Conduct*, 914 P.2d 902, 908 (Colo. 1996)). Because cause in fact is not at issue here, we focus our analysis on proximate cause.

¶21 "'[F]oreseeability is the touchstone of proximate cause,' acting as a guidepost to delineate the extent to which a defendant may be held legally responsible for a plaintiff's injury." *Build It and They Will Drink*, 253 P.3d at 306 (quoting *Walcott v. Total Petroleum, Inc.*, 964 P.2d 609, 611 (Colo. App. 1998)). We

have long held that a plaintiff can prove proximate cause by showing that it was foreseeable that the defendant's negligence would result in injuries to others and that this negligence was a substantial factor in causing the plaintiff's injuries. *Id.*; *Ekberg v. Greene*, 588 P.2d 375, 377 (Colo. 1978).

¶22    But proximate cause doesn't require a defendant "to foresee the exact nature and extent of the injuries or the precise manner in which the injuries occur." *Build It and They Will Drink*, 253 P.3d at 306 (quoting *HealthONE v. Rodriguez*, 50 P.3d 879, 889 (Colo. 2002)).  To establish proximate cause, it simply must have been foreseeable "that *some* injury will likely result in some manner as a consequence of [the defendant's] negligent acts."  *Id.* (quoting *HealthONE*, 50 P.3d at 889).  A foreseeable act is one that "is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct."  *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 48 (Colo. 1987) (quoting 3 Fowler V. Harper et al., *The Law of Torts* § 18.2, at 658–59 (2d ed. 1986)).  So, "foreseeability is based on common sense perceptions of the risks created by various conditions and circumstances."  *Id.*  Stated another way, foreseeability asks "whether the harm that does occur is within the *scope of danger* created by the defendant's negligent conduct."  3 Stuart M. Speiser et al., *American Law of Torts* § 11:3, Westlaw (database updated Mar. 2023).

¶23    Intervening forces—meaning, third-party conduct or other circumstances beyond the negligent actor's control—may also affect foreseeability and the scope of the actor's liability. "An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." Restatement (Second) of Torts § 441(1) (Am. L. Inst. 1965). An intervening act typically won't "absolve the defendant from responsibility if that act is reasonably and generally foreseeable." *Ekberg*, 588 P.2d at 377; *Deines v. Atlas Energy Servs., LLC*, 2021 COA 24, ¶ 14, 484 P.3d 798, 802 ("To absolve the defendant of responsibility, the intervening cause must be fully independent of, and not have been set in motion by, the original negligence."). This is true even where the act is intentionally tortious or criminal—if the act was reasonably foreseeable, it won't immunize the defendant from liability. *Ekberg*, 588 P.2d at 376. But, if the intervening act isn't reasonably foreseeable, it may be a superseding cause that breaks the chain of causation and relieves the defendant of liability. *Albo v. Shamrock Oil & Gas Corp.*, 415 P.2d 536, 537 (Colo. 1966); *see also Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 81 (Colo. 2001).

## C. The Rescue Doctrine

¶24    In *Wagner v. International Railway Co.*, 133 N.E. 437, 437–38 (N.Y. 1921), Judge Cardozo famously declared:

> Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct

12

to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer. . . . The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had.

¶25 This "rescue doctrine," as it came to be known, responds to the "human instinct to help those in need, even at the risk of one's own safety" and seeks to ensure that "negligent actors who put others at risk may be held liable when their negligence injures a third-party rescuer." *Garcia II*, ¶ 1, 467 P.3d at 302–03. Thus, the rescue doctrine precludes tortfeasors from escaping liability by arguing that the rescue attempt itself was unforeseeable or that the rescuer's decision to intervene was a superseding cause that severed the chain of causation from the original tortfeasor's conduct. *See Wagner*, 133 N.E. at 437; *see also Govich v. N. Am. Sys., Inc.*, 814 P.2d 94, 99 (N.M. 1991) (recognizing the rescue doctrine's long-standing dual purpose of establishing a causal link between the defendant's negligence and the plaintiff's injury and of eliminating the absolute defense of contributory negligence).

¶26 Many jurisdictions and treatises have discussed the rescue doctrine at length, but we have rarely addressed it in Colorado. *See Garcia II*, ¶ 15, 467 P.3d at 305. It seems that most jurisdictions view the rescue doctrine as establishing the duty a defendant owes to a rescuer, independent of the duty owed to the rescuee.

13

*See Govich*, 814 P.2d at 101; *see also Dillard v. Pittway Corp.*, 719 So. 2d 188, 193 (Ala. 1998) ("[I]t is always foreseeable that someone may attempt to rescue a person who has been placed in a dangerous position and that the rescuer may incur injuries in doing so. Thus, if the defendant has acted negligently toward the person being rescued, he has acted negligently toward the rescuer."). And while there are slight variations in how different jurisdictions approach causation under the rescue doctrine, most seem to adopt a traditional, foreseeability approach. *See, e.g., Bole v. Erie Ins. Exch.*, 50 A.3d 1256, 1260–61 (Pa. 2012); *Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 844 (Iowa 2005). We do so too.

¶27      Under this approach, a rescuer's intervention is foreseeable, but harm to the rescuer may not be. *See Est. of Newton v. McNew*, 698 P.2d 835, 837 (Colo. App. 1984). The first question is whether the plaintiff qualified as a rescuer. *Garcia II*, ¶ 27, 467 P.3d at 307 (providing the three-prong test required to establish a plaintiff as a rescuer). If the plaintiff was acting as a rescuer when harmed, the next inquiry is whether the rescuer's harm was reasonably foreseeable based on the circumstances created by the tortious conduct and a reasonable rescue attempt. *See Govich*, 814 P.2d at 100 ("Rather than to rely on the rescue doctrine's fictive notions of causation . . . it is more direct to rely upon the . . . traditional rules of proximate and independent intervening causation."). If the harm was not "a natural, probable, and reasonably foreseeable consequence of the negligent act,"

14

the tortfeasor isn't liable for causing it. *Starks v. Smith*, 475 P.2d 707, 709 (Colo. App. 1970) (Coyte, J., dissenting). So, if a rescuer is harmed during a rescue attempt in a way that is totally independent of and in no way a foreseeable result of the circumstances created by the initial tortious conduct, like getting struck by lightning while trying to put out a house fire, the defendant generally won't be liable for that harm. *See Snellenberger v. Rodriguez*, 760 S.W.2d 237, 238 (Tex. 1988) (concluding that the rescuer's harm was not a foreseeable result of the defendant's negligence, so the defendant wasn't the proximate cause of that harm).

¶28 By emphasizing the specific facts and circumstances of each situation, our long-standing foreseeability jurisprudence adequately addresses the scope of liability under the rescue doctrine. Furthermore, adhering to a foreseeability approach strikes the desired balance between allowing rescuers to recover for injuries on the one hand, while also ensuring that alleged tortfeasors aren't exposed to liability unconnected to their tortious actions on the other. Such an approach reflects that the duty to a rescuer flows from the duty owed to the rescuee and the foreseeability of a rescue attempt, while causation remains grounded in the reasonable foreseeability of the risk of harm. *See Garcia III*, ¶ 74, 503 P.3d at 882 (Martinez, J., concurring in part and dissenting in part) (citing *Garcia II*, ¶ 33, 467 P.3d at 307).

¶29     Before applying this approach to the case before us, we briefly address the disagreement between the majority and the dissent below about the applicability of section 32 of the Third Restatement of Torts.

## D. Restatement (Third) of Torts

¶30     Section 32 of the most recent Restatement of Torts discards the term foreseeability in favor of a scope-of-risk approach dubbed "the risk standard."[3] Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 29 cmt. d (Am. L. Inst. 2010).  But, as the division majority noted, the foreseeability standard is congruent with the risk standard.  *Garcia III*, ¶ 51, 503 P.3d at 878; *see also* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 29 cmt. e (Am. L. Inst. 2010).

¶31     Section 32 of the Third Restatement states:

> [I]f an actor's tortious conduct imperils another or the property of another, the scope of the actor's liability includes any harm to a person resulting from that person's efforts to aid or to protect the imperiled person or property, so long as the harm arises from a risk that inheres in the effort to provide aid.

---

[3] We recognize that the Third Restatement has been criticized for departing from the Restatement's role to "restate, not create, the law."  Vicki Lawrence MacDougall, *The Jury Verdict Favored Helen Palsgraf: A Critique of the Restatement (Third) PEH and Foreseeability — "What Does It All Mean?"*, 43 Okla. City U. L. Rev. 1, 4 (2019).  But, as we explain in this Part D, we need neither adopt nor reject the relevant portion of the Third Restatement because we conclude it is consistent with our foreseeability jurisprudence.

16

Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 32 (Am. L. Inst. 2010). The section's comments further explain how to apply this approach to proximate cause. Comment a explains that this section expands prior conceptions of the rescue doctrine by "negating both superseding cause and proximate cause as barriers to recovery." *Id.* at cmt. a. Comments b and c then address the scope of liability.

¶32 Comment b states that "an actor, whose tortious conduct puts the actor or another at risk, is subject to liability to a third person who is injured while attempting to come to the aid of the actor or of the other imperiled person." *Id.* at cmt. b. Comment b presumes liability for those who endanger others, "regardless of whether the rescuer might be thought foreseeable or whether harm to the rescuer might be thought within the risk standard." *Id.* Indeed, comment b explains that a factfinder need not address "whether the harm to the rescuer was among the risks that made the actor's conduct tortious." *Id.* Instead, comment b appears to embody the long-standing principle that danger invites rescue by broadly espousing a causal link between a defendant's tortious conduct and harm to a rescuer. *See id.*

¶33 Although comment b expands liability by acknowledging that a rescuer foreseeably will come to the aid of someone who is endangered, comment c limits liability by recognizing that "[t]he rescue doctrine does not obviate all scope-of-

17

liability limitations on a tortious actor's liability." *Id.* at cmt. c. Comment c states that, "when the harm suffered by the rescuer is different from the harms whose risks would be expected to arise in the rescue, the actor is not liable because the harm is outside the scope of liability." *Id.*

¶34 We agree with the majority that the relevant portion of the Third Restatement is consistent with Colorado's foreseeability approach. *See Garcia III*, ¶ 51, 503 P.3d at 878. Section 32 and its accompanying comments interpret the rescue doctrine as extending the tortfeasor's duty to the rescuer. Under our traditional approach, we also assume that rescuers are foreseeable. Section 32 then considers what types of harm are within the risks that "would reasonably be anticipated" from the rescue attempt invited by the tortfeasor's conduct. Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 32 cmt. c (Am. L. Inst. 2010). Similarly, our jurisprudence considers whether the rescuer's injuries were foreseeable because they naturally flowed from the circumstances created by the defendant's tortious conduct or the rescue attempt.

¶35 Importantly, however, this doesn't mean that precisely how the injuries occurred had to be foreseeable, only that the harm was within the scope of risk that was reasonably foreseeable.

¶36 With this approach in mind, we return to the case at hand.

18

## E. Application

¶37 The trial court provided standard instructions on what we have termed our "traditional approach" to negligence and proximate cause. It instructed the jury that, to find Colorado Cab liable for Garcia's injuries, it had to conclude that Garcia had damages, that Colorado Cab was negligent, and that Colorado Cab's negligence was a cause of Garcia's damages. It further explained that:

- For an act or failure to act to "cause" the damages, it need not be the only or last or nearest cause, "[i]t is enough if the act or failure to act joins in a natural and probable way with some other act . . . to cause some or all of the claimed injury."

- If a third party's conduct amounts to an intervening cause, it will disrupt the chain of causation. An intervening cause is something that "would not have been reasonably foreseen by a reasonably careful person under the same or similar circumstances." So, even "[t]he criminal act of a third party that causes injury, including to a rescuer, does not relieve the defendant of liability if the criminal act of the third party is reasonably foreseeable."

- "The specific injury need not have been foreseeable[;] [i]t is enough if a reasonably careful person, under the same or similar circumstances, would have anticipated that injury to a person in the plaintiff's situation might result from the defendant's conduct."

¶38 On appeal, the division majority acknowledged that Garcia's attempt to rescue Yusuf and Glinton's initial assault of Garcia outside the cab were foreseeable results of Colorado Cab's failure to install safety features in its cabs. *Garcia III*, ¶ 45, 503 P.3d at 876–77. Yet, it then determined, as a matter of law, that

19

Glinton's subsequent theft and use of the cab as a weapon were unforeseeable intervening forces. *Id.* at ¶¶ 46–47, 503 P.3d at 877.

¶39     We agree with the dissent, however, that the incident *could* be interpreted "as a single, continuous response to a rescue beginning with a simple assault and escalating, in a matter of minutes, to an assault with a weapon (the cab)." *Id.* at ¶ 62, 503 P.3d at 880 (Martinez, J., concurring in part and dissenting in part). And like the dissent, we fail to see how "an episode reasonably foreseeable at its outset can, mere minutes later, without having moved to a different location, and perpetrated by the same assailant against the same victims, transform into something so unforeseeable" that the defendant is absolved of liability as a matter of law. *Id.* at ¶ 63, 503 P.3d at 880.

¶40     The evidence shows that Colorado Cab knew that assaults and other violent crimes resulting in serious bodily injury were a foreseeable risk for its cab drivers. For example, one provision in Colorado Cab's driver agreement with Yusuf explained that "operating a vehicle in the transportation of passengers for hire industry is an occupation associated with a potential risk of injury or death." And the safety manual Colorado Cab gives to its drivers informs them that, while "the number of incidents has dropped in the last [ten] years, there is always the danger of being robbed, assaulted, or seriously injured." It further explains that drivers may encounter three types of passengers—the professional criminal, the irate

20

passenger, and the homicidal passenger—and gives advice on how to handle them.

¶41 Colorado Cab's general manager acknowledged that drivers are at risk of being assaulted, robbed, or carjacked and that "a carjacked or commandeered taxi could cause injury or death to members of the public or pedestrians." He explained that drivers are more susceptible to attack, primarily because "[t]hey oftentimes pick up intoxicated passengers." And he acknowledged that there have been numerous assaults against Colorado Cab's drivers that have resulted in serious bodily injury and a police response.

¶42 Considering this evidence, Colorado Cab's failure to install certain safety measures in its cabs made it reasonably foreseeable that a passenger would attack one of its drivers and that a third party witnessing such an attack might attempt to aid the driver. Once such an assault begins, it is also reasonably foreseeable that it could escalate in unusual ways, especially given the probability that the assailant will be intoxicated. While the precise way Glinton chose to lash out at Garcia here might seem bizarre, it remains reasonably foreseeable that an intoxicated assailant could seize any weapon at hand to inflict harm on a rescuer who provoked the assailant's drunken wrath. *See Est. of Newton*, 698 P.2d at 837 (acknowledging that "there was ample evidence from which the jury could infer the foreseeability of the alleged intervening acts as within the scope of the original risk" stemming

from the defendant's tortious conduct); *see also Deines*, ¶ 13, 484 P.3d at 802 ("Proximate cause may be established even where the actor did not and could not foresee the precise way the injury would come about."). Simply because a particular manner of causing harm has never occurred doesn't mean that the risk of the harm occurring isn't reasonably foreseeable. *Taco Bell*, 744 P.2d at 48. Accordingly, a reasonable jury could conclude that it was foreseeable that Colorado Cab's negligence in failing to install safety measures allowed an enraged, intoxicated passenger to commandeer a cab and use it as a weapon against the driver, the rescuer, or both.

¶43    In short, we agree with the dissent that, "at the onset of this rescue, . . . the risk of physical harm could easily have been anticipated . . . [and] could be minor or severe, whether resulting from fists or other weapons . . . ." *Garcia III*, ¶ 82, 503 P.3d at 883 (Martinez, J., concurring in part and dissenting in part). And we similarly "see no principled way to conclude that minor harm, but not severe harm, could reasonably have been anticipated." *Id.* at 884. We also agree with the dissent that, although Glinton's conduct was extraordinary, "the evidence in this case . . . is not clear enough to warrant taking the question of proximate cause away from the jury." *Id.* at ¶ 60, 503 P.3d at 880; *see also Moffatt v. Tenney*, 30 P. 348, 349 (Colo. 1892); *Rocky Mountain Planned Parenthood*, ¶ 38, 467 P.3d at 294; *Deines*, ¶ 15, 484 P.3d at 802 (recognizing the key question as whether *any* rational juror could

22

find that the intervening act was reasonably foreseeable based on the defendant's negligence).

¶44 The jury's verdict here indicates that it found Glinton's theft and use of the cab as a weapon to be a foreseeable escalation of the initial, foreseeable assault and not conduct that was fully independent of Colorado Cab's alleged negligence. *See Garcia III*, ¶ 58, 503 P.3d at 880 (Martinez, J., concurring in part and dissenting in part). We must respect that verdict.

## III. Conclusion

¶45 We reverse the judgment of the court of appeals and reinstate the jury's verdict.